Frank E. **DORTON** and J. A. Castle, Partners, d/b/a The Carpet Mart, Plaintiffs-Appellees,

v.

**COLLINS & AIKMAN CORPORATION** and Painter Carpet Mills, Inc. Defendants-Appellants.

No. 71–1129.

United States Court of Appeals, Sixth Circuit.

Jan. 6, 1972.

Brooks, Circuit Judge, took no part in decision.

½

.Herbert R. Silvers, Greeneville, Tenn., for defendants-appellants; Milligan, Silvers, Coleman & Fletcher, Greeneville, Tenn., on brief.

William W. Hawkins, Kingsport, Tenn., for plaintiffs-appellees; Smoot & Hawkins, Kingsport, Tenn., of counsel.

Before CELEBREZZE, BROOKS* and MILLER, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from the District Court's denial of Defendant-Appellant's motion for a stay pending arbitration, pursuant to Section 3 of the United States Arbitration Act of 1925, 9 U.S.C. § 3. The suit arose after a series of over 55 transactions during 1968, 1969, and 1970 in which Plaintiffs-Appellees

* The Honorable Henry L. Brooks took part in the decision but died before it was filed.

[hereinafter The Carpet Mart], carpet retailers in Kingsport, Tennessee, purchased carpets from Defendant-Appellant [hereinafter Collins & Aikman], incorporated under the laws of the State of Delaware, with its principal place of business in New York, New York, and owner of a carpet manufacturing plant [formerly the Painter Carpet Mills, Inc.] located in Dalton, Georgia. The Carpet Mart originally brought this action in a Tennessee state trial court, seeking compensatory and punitive damages in the amount of $450,000 from Collins & Aikman for the latter's alleged fraud, deceit, and misrepresentation in the sale of what were supposedly carpets manufactured from 100% Kodel polyester fiber. The Carpet Mart maintains that in May, 1970, in response to a customer complaint, it learned that not all of the carpets were manufactured from 100% Kodel polyester fiber but rather some were composed of a cheaper and inferior carpet fiber. After the cause was removed to the District Court on the basis of diversity of citizenship, Collins & Aikman moved for a stay pending arbitration, asserting that The Carpet Mart was bound to an arbitration agreement which appeared on the reverse side of Collins & Aikman's printed sales acknowledgment forms. Holding that there existed no binding arbitration agreement between the parties, the District Court denied the stay. For the reasons set forth below, we remand the case to the District Court for further findings.

## I

■ We initially note that the denial of a motion to stay pending arbitration, although interlocutory in nature, is appealable to this Court. In Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935), the Supreme Court held that a motion to stay pending arbitration under 9 U.S.C. § 3 is, in effect, an application for an interlocutory injunction, the denial of which is appealable under Section 9 of the Judicial Code [now, as amended, 28 U.S.C. § 1292.]

*See also* Hoover Motor Express Co., Inc. v. Teamsters, Chauffeurs, Helpers and Taxicab Drivers, Local No. 327, 217 F. 2d 49, 51 (6th Cir. 1954).

We also find that there is no conflicts of law problem in the present case, the Uniform Commercial Code having been enacted in both Georgia and Tennessee at the time of the disputed transactions. G.C.A. Tit. 109A (eff. April 1, 1963) (without Official Comments); T.C.A. Tit. 47 (eff. June 30, 1964) (with Official Comments).

## II

The primary question before us on appeal is whether the District Court, in denying Collins & Aikman's motion for a stay pending arbitration, erred in holding that The Carpet Mart was not bound by the arbitration agreement appearing on the back of Collins & Aikman's acknowledgment forms. In reviewing the District Court's determination, we must look closely at the procedures which were followed in the sales transactions which gave rise to the present dispute over the arbitration agreement.

In each of the more than 55 transactions, one of the partners in The Carpet Mart, or, on some occasions, Collins & Aikman's visiting salesman, telephoned Collins & Aikman's order department in Dalton, Georgia, and ordered certain quantities of carpets listed in Collins & Aikman's catalogue. There is some dispute as to what, if any, agreements were reached through the telephone calls and through the visits by Collins & Aikman's salesman. After each oral order was placed, the price, if any, quoted by the buyer was checked against Collins & Aikman's price list, and the credit department was consulted to determine if The Carpet Mart had paid for all previous shipments. After it was found that everything was in order, Collins & Aikman's order department typed the information concerning the particular order on one of its printed acknowledgment forms. Each acknowledgment form bore one of three legends: "Acknowledgment," "Customer Acknowledg-

ment," or "Sales Contract." The following provision was printed on the face of the forms bearing the "Acknowledgment" legend:

"The acceptance of your order is subject to all of the terms and conditions on the face and reverse side hereof, including arbitration, all of which are accepted by buyer; it supersedes buyer's order form, if any. It shall become a contract either (a) when signed and delivered by buyer to seller and accepted in writing by seller, or (b) at Seller's option, when buyer shall have given to seller specification of assortments, delivery dates, shipping instructions, or instructions to bill and hold as to all or any part of the merchandise herein described, or when buyer has received delivery of the whole or any part thereof, or when buyer has otherwise assented to the terms and conditions hereof."

Similarly, on the face of the forms bearing the "Customer Acknowledgment" or "Sales Contract" legends the following provision appeared:

"This order is given subject to all of the terms and conditions on the face and reverse side hereof, including the provisions for arbitration and the exclusion of warranties, all of which are accepted by Buyer, supersede Buyer's order form, if any, and constitute the entire contract between Buyer and Seller. This order shall become a contract as to the entire quantity specified either (a) when signed and delivered by Buyer to Seller and accepted in writing by Seller or (b) when Buyer has received and retained this order for ten days without objection, or (c) when Buyer has accepted delivery

of any part of the merchandise specified herein or has furnished to Seller specifications or assortments, delivery dates, shipping instructions, or instructions to bill and hold, or when Buyer has otherwise indicated acceptance of the terms hereof."

The small print on the reverse side of the forms provided, among other things, that all claims arising out of the contract would be submitted to arbitration in New York City. Each acknowledgment form was signed by an employee of Collins & Aikman's order department and mailed to The Carpet Mart on the day the telephone order was received or, at the latest, on the following day.[1] The carpets were thereafter shipped to The Carpet Mart, with the interval between the mailing of the acknowledgment form and shipment of the carpets varying from a brief interval to a period of several weeks or months. Absent a delay in the mails, however, The Carpet Mart always received the acknowledgment forms prior to receiving the carpets. In all cases The Carpet Mart took delivery of and paid for the carpets without objecting to any terms contained in the acknowledgment form.

In holding that no binding arbitration agreement was created between the parties through the transactions above, the District Court relied on T.C.A. § 47–2–207 [UCC § 2–207], which provides:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on

---

1. The District Court found that "[Collins & Aikman] has not established to this point that the aforementioned acknowledgment forms were received in each instance." The affidavit of J. A. Castle, a partner in The Carpet Mart, however, states that " . . . I would receive a yellow sheet of paper which I believed to be an acknowledgment that my order was being processed and was being sent to me." And at oral arguments before

this Court, counsel for The Carpet Mart did not attempt to overcome the presumption that the acknowledgments, having been mailed in each instance according to William T. Hester's affidavit, were received. See W. E. Richmond & Co. v. Security National Bank, 16 Tenn.App. 414, 64 S.W.2d 863 (1933); Roto-Lith, Ltd. v. F. P. Bartlett & Co., 297 F.2d 497, 498 (1st Cir. 1962).

assent to the additional or different terms.

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of chapters 1 through 9 of this title."

The District Court found that Subsection 2–207(3) controlled the instant case, quoting the following passage from 1 W. Hawkland, A Transactional Guide to the Uniform Commercial Code § 1.-090303, at 19–20 (1964):

"If the seller . . . ships the goods and the buyer accepts them, a contract is formed under subsection (3). The terms of this contract are those on which the purchase order and acknowledgment agree, and the additional terms needed for a contract are to be found throughout the U.C.C.

. . . [T]he U.C.C. does not impose an arbitration term on the parties where their contract is silent on the matter. Hence, a conflict between an arbitration and an no-arbitration clause would result in the no-arbitration clause becoming effective."

Under this authority alone the District Court concluded that the arbitration clause on the back of Collins & Aikman's sales acknowledgment had not become a binding term in the 50-odd transactions with The Carpet Mart.

In reviewing this determination by the District Court, we are aware of the problems which courts have had in interpreting Section 2–207. This section of the UCC has been described as a "murky bit of prose," Southwest Engineering Co. v. Martin Tractor Co., 205 Kan. 684, 694, 473 P.2d 18, 25 (1970), as "not too happily drafted," Roto-Lith Ltd. v. F. P. Bartlett & Co., 297 F.2d 497, 500 (1st Cir. 1962), and as "one of the most important, subtle, and difficult in the entire Code, and well it may be said that the product as it finally reads is not altogether satisfactory." Duesenberg & King, Sales and Bulk Transfers under the Uniform Commercial Code, (Vol. 3, Bender's Uniform Commercial Code Service) § 3.03, at 3–12 (1969). Despite the lack of clarity in its language, Section 2–207 manifests definite objectives which are significant in the present case.

As Official Comment No. 1 indicates, UCC § 2–207 was intended to apply to two situations:

"The one is where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal acknowledgments or memoranda embodying the terms so far as agreed upon and adding terms not discussed. The other situation is one in which a wire or letter expressed and intended as the closing or confirmation of an agreement adds further minor suggestions or proposals such as 'ship by Tuesday,' 'rush,' 'ship draft against bill of lading inspection allowed,' or the like." T.C.A. § 47–2–207 [UCC § 2–207], Official Comment 1.

Although Comment No. 1 is itself somewhat ambiguous, it is clear that Section 2–207, and specifically Subsection 2–207(1), was intended to alter the "ribbon matching" or "mirror" rule of common law, under which the terms of an acceptance or confirmation were required to be identical to the terms of the offer or oral agreement, respectively. 1 W. Hawkland, *supra*, at 16; R. Nords-

trom, Handbook of the Law of Sales, Sec. 37, at 99–100 (1970). Under the common law, an acceptance or a confirmation which contained terms additional to or different from those of the offer or oral agreement constituted a rejection of the offer or agreement and thus became a counter-offer. The terms of the counter-offer were said to have been accepted by the original offeror when he proceeded to perform under the contract without objecting to the counter-offer. Thus, a buyer was deemed to have accepted the seller's counter-offer if he took receipt of the goods and paid for them without objection.

Under Section 2–207 the result is different. This section of the Code recognizes that in current commercial transactions, the terms of the offer and those of the acceptance will seldom be identical. Rather, under the current "battle of the forms," each party typically has a printed form drafted by his attorney and containing as many terms as could be envisioned to favor that party in his sales transactions. Whereas under common law the disparity between the fine-print terms in the parties' forms would have prevented the consummation of a contract when these forms are exchanged, Section 2–207 recognizes that in many, but not all, cases the parties do not impart such significance to the terms on the printed forms. *See* 1 W. Hawkland, *supra*; § 1.0903, at 14, § 1.-090301, at 16. Subsection 2–207(1) therefore provides that "[a] definite and seasonable expression of acceptance or a written confirmation . . . operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." Thus, under Subsection (1), a contract is recognized notwithstanding the fact that an acceptance or confirmation contains terms additional to or different from those of the offer or prior agreement, provided that the offeree's intent to accept the offer is definitely expressed, *see* Sections 2–204

and 2–206, and provided that the offeree's acceptance is not expressly conditioned on the offeror's assent to the additional or different terms. When a contract is recognized under Subsection (1), the additional terms are treated as "proposals for addition to the contract" under Subsection (2), which contains special provisions under which such additional terms are deemed to have been accepted when the transaction is between merchants. Conversely, when no contract is recognized under Subsection 2–207(1)—either because no definite expression of acceptance exists or, more specifically, because the offeree's acceptance is expressly conditioned on the offeror's assent to the additional or different terms—the entire transaction aborts at this point. If, however, the subsequent conduct of the parties—particularly, performance by both parties under what they apparently believe to be a contract—recognizes the existence of a contract, under Subsection 2–207(3) such conduct by both parties is sufficient to establish a contract, notwithstanding the fact that no contract would have been recognized on the basis of their writings alone. Subsection 2–207(3) further provides how the terms of contracts recognized thereunder shall be determined.

With the above analysis and purposes of Section 2–207 in mind, we turn to their application in the present case. We initially observe that the affidavits and the acknowledgment forms themselves raise the question of whether Collins & Aikman's forms constituted acceptances or confirmations under Section 2–207. The language of some of the acknowledgment forms ("The acceptance of your order is subject to . . .") and the affidavit of Mr. William T. Hester, Collins & Aikman's marketing operations manager, suggest that the forms were the only acceptances issued in response to The Carpet Mart's oral offers. However, in his affidavit Mr. J. A. Castle, a partner in The Carpet Mart, asserted that when he personally called Collins & Aikman to order

carpets, someone from the latter's order department would agree to sell the requested carpets, or, alternatively, when Collins & Aikman's visiting salesman took the order, he would agree to the sale, on some occasions after he had used The Carpet Mart's telephone to call Collins & Aikman's order department. Absent the District Court's determination of whether Collins & Aikman's acknowledgment forms were acceptances or, alternatively, confirmations of prior oral agreements, we will consider the application of section 2–207 to both situations for the guidance of the District Court on remand.

■ Viewing Collins & Aikman's acknowledgment forms as acceptances under Subsection 2–207(1), we are initially faced with the question of whether the arbitration provision in Collins & Aikman's acknowledgment forms were in fact "additional to or different from" the terms of The Carpet Mart's oral offers. In the typical case under Section 2–207, there exist both a written purchase order and a written acknowledgment, and this determination can be readily made by comparing the two forms. In the present case, where the only written forms were Collins & Aikman's sales acknowledgments, we believe that such a comparison must be made between the oral offers and the written acceptances.[2] Although the District Court apparently assumed that The Carpet Mart's oral orders did not include in their terms the arbitration provision which appeared in Collins & Aikman's acknowledgment forms, we believe that a specific finding on this point will be required on remand.[3]

■ Assuming, for purposes of analysis, that the arbitration provision was an addition to the terms of The Carpet Mart's oral offers, we must next determine whether or not Collins & Aikman's acceptances were "expressly made conditional on assent to the additional . . . terms" therein, within the proviso of Subsection 2–207(1). As set forth in full above, the provision appearing on the face of Collins & Aikman's acknowledgment forms stated that the acceptances (or orders) were "subject to all of the terms and conditions on the face and reverse side hereof, including arbitration, all of which are accepted by buyer." The provision on the "Acknowledgment" forms further stated that Collins & Aikman's terms would become the basis of the contract between the parties

"either (a) when signed and delivered by buyer to seller and accepted in writing by seller, or (b) at Seller's option, when buyer shall have given to seller specification of assortments, delivery dates, shipping instructions, or instructions to bill and hold as to all or any part of the merchandise herein described, or when buyer has received delivery of the whole or any part thereof, or when buyer has otherwise assented to the terms and conditions hereof."

Similarly, the provision on the "Customer Acknowledgment" and "Sales Contract" forms stated that the terms therein would become the basis of the contract

"either (a) when signed and delivered by Buyer to Seller and accepted in writing by Seller or (b) when Buyer has received and retained this order for ten days without objection, or (c)

2. In describing the second (offer-acceptance) situation to which Section 2–207 was intended to apply, Official Comment No. 1 describes the acceptance as a "wire or letter" but makes no such reference to a written offer. As in the situation where there is but one written confirmation sent subsequent to an oral agreement—which is expressly referred to in Comment No. 1—we believe the drafters anticipated cases, such as the present

one, where a written acceptance would be sent in response to an oral offer.

3. It is not inconceivable that a buyer might request that all claims be submitted to arbitration, *see* Universal Oil Products v. S.C.M. Corp., 313 F.Supp. 905 (D.Conn.1970), or that a buyer might orally submit to the seller's known policy of arbitration in order to facilitate acceptance of the offer.

when Buyer has accepted delivery of any part of the merchandise specified herein or has furnished to Seller specifications or assortments, delivery dates, shipping instructions to bill and hold, or when Buyer has otherwise indicated acceptance of the terms hereof."

Although Collins & Aikman's use of the words "subject to" suggests that the acceptances were conditional to some extent, we do not believe the acceptances were "expressly made conditional on [the buyer's] assent to the additional or different terms," as specifically required under the Subsection 2–207(1) proviso. In order to fall within this proviso, it is not enough that an acceptance is expressly conditional on additional or different terms; rather, an acceptance must be *expressly* conditional on the offeror's *assent* to those terms. Viewing the Subsection (1) proviso within the context of the rest of that Subsection and within the policies of Section 2–207 itself, we believe that it was intended to apply only to an acceptance which clearly reveals that the offeree is unwilling to proceed with the transaction unless he is assured of the offeror's assent to the additional or different terms therein. *See* 1 W. Hawkland, *supra*, § 1.090303, at 21. That the acceptance is predicated on the offeror's assent must be "directly and distinctly stated or expressed rather than implied or left to inference." Webster's Third International Dictionary (defining "express").

Although the UCC does not provide a definition of "assent," it is significant that Collins & Aikman's printed acknowledgment forms specified at least seven types of action or inaction on the part of the buyer which—sometimes at Collins & Aikman's option—would be deemed to bind the buyer to the terms therein. These ranged from the buyer's signing and delivering the acknowledgment to the seller—which indeed could have been recognized as the buyer's assent to Collins & Aikman's terms—to the buyer's retention of the acknowledgment for ten days without objection—which could never have been recognized as the buyer's assent to the additional or different terms where acceptance is expressly conditional on that assent.[4]

To recognize Collins & Aikman's acceptances as "expressly conditional on [the buyer's] assent to the additional . . . terms" therein, within the proviso of Subsection 2–207(1), would thus require us to ignore the specific language of that provision.[5] Such an interpretation is not justified in view of the fact that Subsection 2–207(1) is clearly designed to give legal recognition to many contracts where the variance between the offer and acceptance would have precluded such recognition at common law.

Because Collins & Aikman's acceptances were not expressly conditional on the buyer's assent to the additional terms within the proviso of Subsection 2–207(1), a contract is recognized under Subsection (1), and the additional terms are treated as "proposals" for addition to the contract under

---

4. The common law has never recognized silence or inaction as a mode of acceptance. *See* 1 W. Hawkland, *supra*, § 1.-090301, at 17. Under the counter-offer approach which Section 2–207 was designed to modify, the offeror had to take receipt of and pay for the goods without objection before he was deemed to have accepted the terms of the counter-offer. And although Subsection 2–207(2) (c) provides that certain additional terms can be accepted by the offeror's failure to object, nothing in the Code suggests that silence or inaction can be recognized as an offeror's assent in the present context.

5. We are aware that at least two Courts of Appeals have not chosen to read the Subsection 2–207(1) proviso as strictly as we do here. *See* Roto-Lith, Ltd. v. F. P. Bartlett & Co., 297 F.2d 497, 499–500 (1st Cir. 1962); Construction Aggregates Corp. v. Hewitt-Robins, Inc., 404 F.2d 505, 509 (5th Cir. 1969) (dictum). *But see* Matter of Doughboy Industries, Inc., and Pantasote Co., 17 A.D.2d 216, 233 N.Y.S.2d 488 (1962). We believe, however, that the approach adopted here is dictated by both the language of the proviso and the purpose of Subsection 2–207(1).

Subsection 2–207(2).[6] Since both Collins & Aikman and The Carpet Mart are clearly "merchants" as that term is defined in Subsection 2–104(1), the arbitration provision will be deemed to have been accepted by The Carpet Mart under Subsection 2–207(2) unless it materially altered the terms of The Carpet Mart's oral offers. T.C.A. § 47–2–207(2) (b) [UCC § 2–207(2) (b)].[7] We believe that the question of whether the arbitration provision materially altered the oral offer under Subsection 2–207(2) (b) is one which can be resolved only by the District Court on further findings of fact in the present case.[8] If the arbitration provision did in fact materially alter The Carpet Mart's offer, it could not become a part of the contract "unless expressly agreed to" by The Carpet Mart. T.C.A. § 47–2–207 [UCC § 2–207], Official Comment No. 3.

We therefore conclude that if on remand the District Court finds that Collins & Aikman's acknowledgments were in fact acceptances and that the arbitration provision was additional to the terms of The Carpet Mart's oral orders, contracts will be recognized under Subsection 2–207(1). The arbitration clause will then be viewed as a "proposal" under Subsection 2–207(2) which will be deemed to have been accepted by The Carpet Mart unless it materially altered the oral offers.

■ If the District Court finds that Collins & Aikman's acknowledgment forms were not acceptances but rather were confirmations of prior oral agreements between the parties, an application of Section 2–207 similar to that above will be required. Subsection 2–207(1) will require an initial determination of whether the arbitration provision in the confirmations was "additional to or different from" the terms orally agreed upon. Assuming that the District Court finds that the arbitration

6. Apparently believing that Collins & Aikman's acknowledgments were acceptances "expressly . . . conditional on assent to the additional or different terms" under the Subsection 2–207(1) proviso, the District Court recognized contracts between the parties under Subsection 2–207(3) since the subsequent performance by both parties clearly recognized the existence of a contract. Absent our conclusion that Collins & Aikman's acknowledgments do not fall within the Subsection 2–207(1) proviso, we believe that the District Court correctly applied Subsection 2–207(3) to Collins & Aikman's "acceptances" notwithstanding the fact that some of the language of that Subsection appears to refer to the typical situation under Section 2–207 where there exist both a written offer and a written acceptance. Although we recognize the value that writings by both parties serve in sales transactions, where Subsection 2–207(3) is otherwise applicable we do not believe the purposes of that Subsection should be abandoned simply because the offeror chose to rely on his oral offer. In such a case, we believe that the District Court's comparison of the terms of the oral offer and the written acceptance under Subsection (3) would have been correct.

7. The parties do not dispute the fact that The Carpet Mart made no objections to the terms embodied in Collins & Aikman's acknowledgments. Therefore, Subsection 2–207(2) (c) is not relevant in the present case. And although it is not inconceivable that an oral offer could "expressly [limit] acceptance to the terms of the offer" under Subsection 2–207 (2) (a), The Carpet Mart has never asserted that this was the nature of its offers to Collins & Aikman. We are therefore concerned with only Subsection 2–207(2) (b).

8. While T.C.A. § 47–2–207 [UCC § 2–207], Official Comment Nos. 4 and 5 provide examples of terms which would and would not materially alter a contract, an arbitration clause is listed under neither. Although we recognize the rule "that the agreement to arbitrate must be direct and the intention made clear, without implication, inveiglement or subtlety," Matter of Doughboy Industries, Inc., and Pantasote Co., 17 A.D.2d 216, 218, 233 N.Y.S.2d 488, 492 (1962) (indicating in dictum that an arbitration clause would materially alter a contract under 2–207(2) (b)), we believe the question of material alteration necessarily rests on the facts of each case. See American Parts Co. v. American Arbitration Ass'n, 8 Mich.App. 156, 171, 154 N.W.2d 5, 14 (1967).

provision was not a term of the oral agreements between the parties, the arbitration clause will be treated as a "proposal" for addition to the contract under Subsection 2–207(2), as was the case when Collins & Aikman's acknowledgments were viewed as acceptances above. The provision for arbitration will be deemed to have been accepted by The Carpet Mart unless the District Court finds that it materially altered the prior oral agreements, in which case The Carpet Mart could not become bound thereby absent an express agreement to that effect.

As a result of the above application of Section 2–207 to the limited facts before us in the present case, we find it necessary to remand the case to the District Court for the following findings: (1) whether oral agreements were reached between the parties prior to the sending of Collins & Aikman's acknowledgment forms; if there were no such oral agreements, (2) whether the arbitration provision appearing in Collins & Aikman's "acceptances" was additional to the terms of The Carpet Mart's oral offers; and, if so, (3) whether the arbitration provision materially altered the terms of The Carpet Mart's oral offers. Alternatively, if the District Court does find that oral agreements were reached between the parties before Collins & Aikman's acknowledgment forms were sent in each instance, it will be necessary for the District Court to make the following findings: (1) whether the prior oral agreements embodied the arbitration provision appearing in Collins & Aikman's "confirmations"; and, if not, (2) whether the arbitration provision materially altered the prior oral agreements. Regardless of whether the District Court finds Collins & Aikman's acknowledgment forms to have been acceptances or confirmations, if the arbitra-

tion provision was additional to, and a material alteration of, the offers or prior oral agreements, The Carpet Mart will not be bound to that provision absent a finding that it expressly agreed to be bound thereby.

### III

 If, on remand, the District Court finds that the arbitration provision exists as a term of the contracts recognized under this application of Section 2–207, Collins & Aikman's motion for a stay pending arbitration must be granted despite the fact that this is an action in fraud. In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court held that in passing upon a motion for a stay pending arbitration under 9 U.S.C. § 3, a federal court may not consider claims of fraud in the inducement of the overall contract when the arbitration clause is sufficiently broad to encompass claims of fraud. Rather, in such cases a federal court may consider only claims which relate to the "making" of the arbitration agreement itself. 388 U.S. at 402–404, 87 S.Ct. 1801. In the present case, the language of Collins & Aikman's arbitration clause is virtually identical to that of the arbitration agreement in the Prima Paint case.[9] Moreover, although The Carpet Mart challenges the legibility of the fine-print arbitration provision on the reverse side of Collins & Aikman's forms (which was specifically called to the buyer's attention on the face of those forms), The Carpet Mart's claim of fraud relates only to the substitutions for Kodel polyester fibers under the overall contract and not to the arbitration clause itself. Therefore, upon a finding by the District Court that the arbitration clause was a term of the contracts recognized under T.C.A. §

9. Collins & Aikman's clause reads in pertinent part: "Any controversy arising out of or relating to this contract shall be settled by arbitration. . . ." In comparison, the arbitration agreement in the Prima Paint case read in pertinent part: "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration. . . ." 388 U.S. at 398, 87 S.Ct. at 1803.

47–2–207 (UCC § 2–207), Collins & Aikman's motion for a stay pending arbitration must be granted.

For the reasons set forth above, the case is remanded to the District Court for further findings consistent with this opinion.