**DRESSER INDUSTRIES, INC., WAUKESHA ENGINE DIVISION, a foreign corporation, Plaintiff–Counterdefendant,**

v.

**The GRADALL COMPANY, a foreign corporation, Defendant–Counterplaintiff.**

No. 86–C–0137.

United States District Court, E.D. Wisconsin.

Dec. 15, 1988.

728

Jon P. Christiansen, Foley & Lardner, Milwaukee, Wis., for plaintiff-counterdefendant.

Michael M. Lorge, Laser, Schostok, Kolman & Frank, Chicago, Ill., for defendant-counterplaintiff.

## DECISION AND ORDER

WARREN, Chief Judge.

The Waukesha Engine Division of Dresser Industries, Inc. ("Waukesha") brought suit against The Gradall Company ("Gradall") over a dispute arising from Gradall's purchase of engines from Waukesha. Gradall answered and counterclaimed. Presently pending before the Court is Waukesha's motion for summary judgment on Gradall's counterclaims. Based on the decision below, the motion will be granted in part and denied in part.

### Background

Dresser Industries, Inc. is a Delaware corporation. Its Waukesha Engine Division has an office and principal place of business in Waukesha, Wisconsin. The Waukesha Division is a manufacturer of natural gas and diesel powered engines for industrial and other applications. The Gradall Company is an Ohio corporation with its principal place of business in New Philadelphia, Ohio. Gradall is a manufacturer of industrial equipment used primarily in the construction industry.

In the middle to late 1970s, Waukesha developed a small engine called the VRD 220S, which was for use in construction and industrial equipment. One of Waukesha's first customers for this engine was Loed, Inc., a Wausau, Wisconsin, manufacturer of construction equipment. Loed, through an independent Waukesha distributor, purchased approximately 60 engines. Loed used the engines in two types of its construction vehicles.

In October of 1982, Loed sold a line of its equipment (including those using the VRD 220S engine) to Gradall. In December of 1982, Gradall contacted Waukesha in an attempt to purchase engines directly. Soon thereafter, Gradall began purchasing engines from Waukesha. Between February of 1983 and mid–1984, Gradall purchased approximately 380 VRD 220S engines directly from Waukesha pursuant to 20 or 21 separate transactions. Each transaction involved an exchange of sales forms between Gradall and Waukesha. Gradall would send a purchase order, which stated on the front of the form:

ENTER OUR ORDER FOR MATERIALS OR SERVICES SUBJECT TO ALL

INSTRUCTIONS, PROVISIONS, TERMS AND CONDITIONS ON FACE AND REVERSE SIDE, ALL OF WHICH FORM A PART OF THIS ORDER.

The reverse sides of the purchase orders contained preprinted terms and conditions. The first paragraph contained the following clause:

ACCEPTANCE—ENTIRE AGREEMENT—MODIFICATION.

Acceptance of this order shall be limited to the terms and conditions contained herein and incorporated herein by reference. This order shall be deemed accepted upon the return of the acknowledgement copy of this order or commencement of performance by Seller. Gradall rejects any additional or inconsistent terms and conditions offered by Seller at any time irrespective of Gradall's acceptance of or payment for the items. These terms and conditions and those incorporated herein by reference constitute the entire agreement between the parties and no change to or modification of this order shall be binding on Gradall unless signed by an authorized Gradall representative.

The terms and conditions of the warranty provision were as follows:

WARRANTY. Seller warrants to Gradall its successors and customers that all items furnished (including all replacement items and all replacement or corrected components which Seller furnishes pursuant to this section 11) will be free from defects in material and workmanship for a period of fifteen (15) months after delivery to Gradall (or for such longer period as may be extended by Seller and any warranty to its most favored customer for similar items during the term of this order), will conform to applicable information, date, drawings, specifications, samples and other descriptions furnished or specified by Gradall or Seller, and to the extent items are not manufactured to Gradall's specific design will be merchantable, suited for the intended purposes and free from all other defects, including defects in design. In the event Seller is required to replace or correct any component of any item pursuant to a breach of the foregoing warranty, the running of the warranty period for the item for which the defective component is a part shall be suspended from the date Seller receives notice of the breach of warranty until the date the component is replaced or corrected. Gradall's approval of Seller's samples or first items shall not be construed as a waiver by Gradall of any requirement of the applicable information, data, drawings, specifications, and/or other descriptions or of any express or implied warranty.

Waukesha responded to each purchase order with an "Order Acknowledgment" form. The acknowledgment form contained the following language:

Your order has been entered expressly subject to and conditioned on the understanding that our terms of sale stated on the front and reverse sides hereof, and no others, apply to this sale. Please contact us immediately if you have any questions. IF WE DO NOT HEAR FROM YOU WITHIN TEN (10) DAYS, WE WILL PROCEED WITH PERFORMANCE AND SHIPMENT ON THE ASSUMPTION THAT YOU AGREE TO TERMS OF SALE STATED OR REFERRED TO HEREIN.

The acknowledgement form also contained a limited warranty provision entitled, "Warranty and Limitation of Remedy and Liability." It read, in part:

A. Seller warrants only that its products and parts, when shipped, and its work (including start-up), when performed, will meet all applicable specifications and other specific product and work requirements, including those of performance, if any, of this agreement, and will be free from defects in material and workmanship.... THE FOREGOING IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES WHATSOEVER, EXPRESS, IMPLIED AND STATUTORY INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES TO MERCHANTABILITY AND FITNESS....

B. ...

C. THE FOREGOING IS SELLER'S ONLY OBLIGATION AND BUYER'S EXCLUSIVE REMEDY FOR BREACH OF WARRANTY AND, EXCEPT FOR GROSS NEGLIGENCE, WILLFUL MISCONDUCT AND REMEDIES PERMITTED UNDER THE PERFORMANCE, INSPECTION AND ACCEPTANCE AND THE PATENTS CLAUSES HEREOF, THE FOREGOING IS BUYER'S EXCLUSIVE REMEDY FOR ALL CLAIMS ARISING HEREUNDER OR RELATING HERETO WHETHER SUCH CLAIMS ARE BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY) OR OTHER THEORIES. BUYER'S FAILURE TO SUBMIT A CLAIM AS PROVIDED ABOVE SHALL SPECIFICALLY WAIVE ALL CLAIMS FOR DAMAGES OR OTHER RELIEF, INCLUDING BUT NOT LIMITED TO CLAIMS BASED ON LATENT DEFECTS. IN NO EVENT SHALL BUYER BE ENTITLED TO INCIDENTAL OR CONSEQUENTIAL DAMAGES. ANY ACTION ARISING HEREUNDER OR RELATING HERETO WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY) OR OTHER THEORIES, MUST BE COMMENCED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES OR IT SHALL BE BARRED.

The VRD 220S engine did not perform as Gradall expected. Gradall used the engines in a vehicle called the 534B. Various problems soon arose, including failures of head gaskets, cylinder liners, water pumps, head bolts, oil pumps and crankshafts. Gradall, its dealers, and customers submitted hundreds of warranty claims to Waukesha for these failures. Gradall eventually ceased using the Waukesha engine and replaced those that had been placed in Gradall's 534B vehicle. Gradall also ceased making payments on outstanding balances from the purchase of engines and parts from Waukesha.

On February 9, 1986, Waukesha filed this suit, seeking $113,154.12 as the outstanding balance owed on the purchase of the engines. Waukesha also sought a declaratory judgment establishing the provisions of the contract or contracts applicable to the dealings between the parties. Gradall answered and counterclaimed. The counterclaim alleged nine "counts": (1) breach of express warranty, (2) breach of implied warranty of merchantability, (3) breach of implied warranty of fitness for a particular purpose, (4) breach of contract, (5) negligence, (6) negligent misrepresentation, (7) intentional misrepresentation, (8) strict liability, and (9) punitive damages.

■ Pursuant to a scheduling order signed by the Court on March 24, 1988, Waukesha on June 1, 1988, filed a motion for summary judgment on all counterclaims. The motion has been fully briefed and is now ready for resolution.[1] The motion raises issues on: what choice of law governs the dispute; what warranty controls the raising of claims; whether Gradall can maintain tort actions for purely economic losses; whether Gradall can maintain a claim for intentional misrepresentation; and whether Gradall can recover punitive damages.

## Choice of Law

A preliminary issue that must be resolved is what law governs the various

---

1. Gradall contends at pages I–4 through I–6 of its response brief that summary judgment is inappropriate on any questions of fact since discovery was not foreclosed at the time Waukesha filed this motion. Yet at a status conference held after the completion of briefing on the motion, as well as after the close of discovery, Gradall did not object to Waukesha's statement that the motion was fully ready for resolution. Nor did Gradall at any time make a motion under Rule 56(f) of the Federal Rule of Civil Procedure to hold the briefing of the motion is abeyance pending the completion of further discovery. Moreover, in the decision above, the only area that the Court finds Gradall's assertions lacking in factual support is on the issue of whether Gradall suffered negligence or strict liability damages beyond purely economic losses. Certainly an investigation into what type of damages were suffered by the counterclaimant would not be a difficult one for the counterclaimant to undertake. As such, Gradall's statements on the need to complete discovery ring hollow and the Court will not foreclose Waukesha's motion on that basis.

issues in dispute. Gradall's form specified that Ohio law would govern the contract and disputes arising thereunder; Waukesha's form designated Wisconsin law.

■■■ Since this is a diversity case, this Court, sitting in Wisconsin, must follow the Wisconsin choice of law rules. *See Day and Zimmerman, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975). Wisconsin law, which has incorporated the Uniform Commercial Code, *see* Wis.Stats. § 401.101, *et seq.*, holds that parties to a commercial goods contract may agree to be bound by the law of Wisconsin or of any other state which bears a reasonable relation to the transaction, Wis.Stats. § 401.105. But where, as in the case at hand, the sales documents at issue contain conflicting provisions on the governing law, Wisconsin courts apply the "grouping of contacts" approach for resolution of conflicts pertaining to the validity and rights created by the provisions of a disputed contract. *Twin Disc., Inc. v. Big Bud Tractor, Inc.,* 582 F.Supp. 208, 214 (E.D. Wis.1984), *aff'd,* 772 F.2d 1329 (7th Cir. 1985). Under the "grouping of contacts" approach, the rights under the contract are determined by the local law of the state with which the contract has the most significant relationship. *See Urhammer v. Olson,* 39 Wis.2d 447, 450, 159 N.W.2d 688, 689 (1968). The following factors are used to determine the place with the most significant relationship: (1) place of contracting; (2) place of performance; (3) place of the subject matter of the contract; (4) domicile, nationality, place of incorporation, and place of business of the parties; (5) law under which the contract will be most effective; and (6) other contacts presented in the given case. *Peterson v. Warren,* 31 Wis.2d 547, 558, 143 N.W.2d 560, 564 (1966).

■■■ In the case at hand, the parties, in their respective briefs, do not apply these factors to any specific facts. It is undisputed, however, that in December of 1982, Gradall, an Ohio corporation that had purchased a line of products from a Wisconsin company, contacted Waukesha, a Delaware corporation with an engine division in Waukesha, Wisconsin. The purpose of this contact was to explore the possibility of a direct purchase of Waukesha engines. It also is undisputed that Waukesha and Gradall reached an agreement on the sale of Waukesha engines to Gradall. Between February of 1983 and mid-1984, Gradall purchased approximately 380 engines pursuant to 20 or 21 separate purchase orders. Though the parties do not specify as such, the Court infers that since Waukesha's principal place of business is in Wisconsin, the manufacture of the engines took place there as well. Based on these facts, the Court concludes that Wisconsin law should govern since the contract at issue has its most significant relationship with the State of Wisconsin.

### Controlling Warranty

Next, the Court must address which warranty controls claims arising from the sales of the engines. Waukesha contends that its limited warranty governs and, with its one-year limitation period, bars Counts One through Four of the counterclaim.

Wis.Stats. § 402.206 (section 2–206 of the Uniform Commercial Code) provides:

**Offer and acceptance information of contract**

(1) Unless otherwise unambiguously indicated by the language and circumstances:

(a) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;

(b) an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods, but such a shipment of nonconforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer.

(2) Where the beginning of a requested performance is a reasonable mode of acceptance an offeror who is not notified of acceptance within a reasonable time

may treat the offer as having lapsed before acceptance.

Wis.Stat. § 402.207 (2–207 of the UCC) provides:

**Additional terms in acceptance or confirmation**

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;

(b) They materially alter it; or

(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplemental terms incorporated under any other provisions of this code.

■ In reviewing the "battle of the forms" of the parties, the Court finds that no contract was established by the exchange. Gradall's purchase order certainly met the requirements of section 402.206, but the additional or different terms of Waukesha's acknowledgement form require that the acceptance be analyzed under section 402.207. Under a section 402.-207 analysis, Waukesha's additional or different terms do not alter an acceptance "unless acceptance is expressly made conditional on assent to the additional or different terms." Waukesha's order acknowl-edgement form fulfilled that requirement with the language, "Your order has been entered expressly subject to and conditioned on the understanding that our terms of sales stated on the front and reverse sides hereof, and no others apply to this sale...."

■ Gradall makes much of Waukesha's use of the word "understanding" rather than "assent." But the use of the precise word "assent" is not required by the UCC. *See Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1443 (9th Cir. 1986) (finding that exception of section 2–207(1) was met by language, "acceptance ... is hereby expressly conditional to purchaser's acceptance of the terms and provisions of the acknowledgement form"). Also, under Wisconsin law, "understanding" and "agreement" are synonymous terms. *See Mertz v. Fleming*, 185 Wis. 58, 61–62, 200 N.W. 655 (1924). Moreover, it would strain logic to find that there was an understanding or agreement without there being "assent" by Gradall.

Gradall also tries to fit the facts of this case into the holding of *Dorton v. Collins & Aikman*, 453 F.2d 1161, 1167–69 (6th Cir.1972), which stressed that the key inquiry under the section 2–207(1) exception is not whether the acceptance is conditional on the additional or different terms, but whether acceptance is conditional on the other party's assent to those additional or different terms. The Sixth Circuit in *Dorton v. Collins & Aikman* held that a statement that the acceptance was "subject to" all the terms and conditions of the acceptance was not sufficient to fit the exception. 453 F.2d at 1168. But the language of the acceptance at issue in the case at hand goes beyond "subject to" and adds, "conditioned on the understanding." On this basis, the Court distinguishes the holding in *Dorton*.

Finally, Gradall, argues that the language of Waukesha's acceptance was deficient since it allowed assent to be recognized by Gradall's silence. This argument, however, is misplaced since the issue at present is not whether Gradall assented to the additional or different terms, but

whether acceptance was conditional on the assent to those terms. *See Dorton v. Collins & Aikman,* 453 F.2d at 1168 (finding significance in acknowledgment form specification of actions that would have served as assent by offeror, even if some such actions would not have been valid assent under the UCC).

■ When no contract is recognized under Wis.Stat. § 402.207(1) (section 2–207(1) of the UCC) because of additional or different terms in the acceptance, the Court must construe the additional or different terms as a counteroffer and examine whether these terms were unequivocally assented to by the counter-offeree. *Diamond Fruit Growers v. Krack Corporation,* 794 F.2d at 1445; *Construction Aggregates Corporation v. Hewitt-Robins, Inc.,* 404 F.2d 505, 510 & n. 4 (7th Cir.1968). If no unequivocal assent to the counteroffer exists, the Court then turns to Wis.Stat. § 402.207(3) (section 2–207(3) of the UCC) to determine if the subsequent conduct of the parties created a contract and, if so, what terms controlled. *Dorton v. Collins & Aikman,* 453 F.2d at 166; *Construction Aggregates Corp. v. Hewitt-Robins,* 404 F.2d at 509–10. In the case at hand, Waukesha's motion for summary judgment does not contend that there was unequivocal agreement to the counteroffer, such that a contract was formed under the parameters of section 402.207(1). *See* Plaintiff's Brief in Support of Motion for Summary Judgment at 16. Instead, Waukesha proceeds directly to section 402.-207(3) and the argument that the subsequent conduct of the parties created a contract. Gradall, for its part, does not dispute that if no contract was formed under section 402.207(1) by the exchange of forms, then the subsequent conduct of the parties recognized the existence of a contract under section 402.207(3).

■ Under section 402.207(3), if the conduct of the parties establish the existence of a contract, the terms consist of those on which the writings of the parties agree and any other supplemental terms supplied by other provisions of the UCC. Waukesha argues that under the other pro-

visions of the UCC, the Waukesha limited warranty became part of the contract through (1) the parties' course of performance; (2) through the parties' course of dealing; and (3) through Gradall's express assent to the use of the Waukesha limited warranty. Waukesha argues that evidence of each of these three methods of incorporating the Waukesha warranty into the contract is demonstrated by the following facts. At the time of each transaction between Waukesha and Gradall, Gradall provided a standard limited warranty form, which defined Waukesha's warranty obligations. Waukesha also provided an engine warranty registration form and an operator's manual, each of which contained the Waukesha limited warranty. Gradall then passed this packet of material on to its customers. Also, in its own warranty to those customers, titled "Warranty Policy and Instruction Manual," Gradall stated, "This warranty covers only the products of the Gradall Company. The products of other manufacturers are covered only by such warranties as are made by their manufacturers." When problems arose with the engine, Gradall repeatedly instructed its customers to contact Waukesha directly concerning repair. These customers submitted more than 400 claims directly to Waukesha's service outlets. Approximately 125 of these were direct claims under a campaign Waukesha conducted in conformance with its limited warranty obligations. Furthermore, Waukesha's limited warranty provided that with respect to engine components not manufactured by Waukesha, Waukesha's only obligation was to assign to Gradall the warranty Waukesha had received. Pursuant to this provision, Gradall contacted the Delco Remy Division of General Motors after a problem arose with the engine starter, which Delco Remy had manufactured. Finally, despite actual knowledge of the existence of the Waukesha warranty, Gradall at no time objected to its use.

Gradall does not dispute that it told its dealers and customers that Waukesha would warrant the engine that powered Gradall's product. But that information was passed on because Gradall believed

that Waukesha had agreed to warrant the engines under the terms set forth in Gradall's purchase order. Also, Gradall never referred its customers or dealers to a "Waukesha limited warranty." Rather, Gradall's reference to the "Waukesha warranty" was a generic, short-hand reference to an engine manufacturer's general obligation to stand by its product and deal with failures. Moreover, the copies of the Waukesha warranty sent to Gradall customers were originally sent to Gradall in an owner's packet attached to each engine. The Waukesha limited warranty was on a card added to the back page of the operator's manual and registration card. According to affidavits, this card was read by few, if any, Gradall customers. Finally, Gradall took action directly contrary to the terms of the Waukesha warranty. For example, Gradall submitted claims beyond the time limits of that warranty.

In *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir.1987), the appellate court put forth the following standard for resolving a motion for summary judgment.

> Fed.R.Civ.P. 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law." When the facts are disputed, the parties must produce proper documentary evidence to support their contentions, and may not rest on mere allegations in the pleadings, *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983), *cert. denied*, 464 U.S. 960 [104 S.Ct. 392, 78 L.Ed.2d 336] (1983) or upon conclusory statements in affidavits. *First Commodity Traders v. Heinold Commodities*, 766 F.2d 1007, 1011 (7th Cir.1985). In reviewing a grant of summary judgment, all reasonable inferences from the evidence presented must be drawn in favor of the opposing party. *Matsushita Electronics Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574 [106 S.Ct. 1348, 89 L.Ed.2d 538] (1986).... The mere existence of a factual dispute will not bar

summary judgment unless the "the disputed fact is outcome determinative under governing law." *Egger v. Philipps*, 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied*, 464 U.S. 918 [104 S.Ct. 284, 78 L.Ed.2d 262] (1983).

Applying this standard to the voluminous factual material submitted by the parties, the Court finds that a disputed issue of fact exists that precludes the Court from finding on a summary judgment motion that the Waukesha warranty had been adopted by the parties through a course of performance or through a course of dealings. Obviously the parties believed that some warranty was in existence. But different facts create different inferences as to whether the Waukesha warranty was adopted or whether each party was operating on different beliefs as to which warranty controlled. In particular, the Court finds that a reasonable inference arises from the facts that Gradall believed that the warranty in effect was the one on the Gradall purchase order form. That form described a warranty that Waukesha was obligated to follow. Under that belief, it would not be unreasonable for Gradall to refer to Waukesha's warranty obligations as the "Waukesha warranty." Furthermore, the Court does not find that the undisputed facts establish an assent by Gradall to the particular terms of the Waukesha warranty, especially in light of the wording of the Gradall purchase orders, which rejected in advance any changes in the terms of the Gradall warranty. On the basis of these disputed inferences, the Court finds that summary judgment is precluded on the issue of whether the conduct of the parties evidenced an acceptance of the terms of the Waukesha warranty through the various methods proposed by Waukesha. If no acceptance to the terms existed through those methods, the Waukesha warranty, with its time limitations on claims, would not apply and the UCC's gap fillers would be used. *See* Wis.Stat. §§ 402.313–402.314. Therefore, Waukesha's motion for summary judgment on Counts One through Four of the counterclaim, based on the limita-

tions contained in the Waukesha warranty, will be denied.

## Negligence and Strict Liability

Waukesha also moves for summary judgment on Counts Five and Eight of the counterclaim, the negligence and strict liability claims. Waukesha argues that Gradall's claims allege nothing more than economic losses. Under Wisconsin law, the parties to a commercial transaction cannot recover in tort for purely economic losses. *Twin Disc, Inc. v. Big Bud Tractor,* 772 F.2d 1329, 1332–33 (7th Cir.1985). Wisconsin law, however, does permit recovery for economic losses in tort when the economic losses are combined with damage to plaintiff's person or property (other than the property that was the subject of the commercial transaction). *Wisconsin Power & Light v. Westinghouse Electric Corporation,* 830 F.2d 1405, 1409 & n. 1 (7th Cir.1987) (*citing City of La Crosse v. Schubert, Schroeder & Associates,* 72 Wis.2d 38, 44, 240 N.W.2d 124, 127 (1976); and *Twin Disc.,* 772 F.2d at 1333). Gradall's counterclaim contains a detailed description of the problems associated with the engine and the subsequent economic consequences. *See* Answer and Counterclaim at p. 8–10. The negligence and strict liability section of the counterclaim provide no further details as to Gradall's damages, other than a bare reference to "damages." *See Id.* at pp. 13, 15. Gradall's response to the summary judgment motion does argue that Gradall suffered physical damage to its vehicles as a result of the defective engines. *See* Gradall's Response Brief at 29 (*citing* n. 6). But this claim is supported only by a reference to Defendant's Exhibit No. 2, which is an affidavit of James Cahill, Director of Quality Assurance for Gradall. Cahill's affidavit contains only the following description of Gradall's physical damages beyond those in the engines:

... Many [Waukesha] engines failed in the factory and on the assembly line or while being used as demonstration models for sales purposes. Some of these failures caused damage to the [Gradall] vehicle itself, such as, fan damage to the radiator....

Cahill Affidavit at para. 10.

This bare statement on "some failures" causing "fan damage to the radiator" does not meet the standard of Rule 56 for establishing a material issue of disputed fact as to whether Gradall suffered any damage beyond purely economic loss. As such, the Court finds that Gradall alleges and creates issues of fact in its counterclaims for negligence and strict liability on economic losses only. Therefore, Gradall is barred as a matter of law from raising tort claims under negligence and strict liability. Summary judgment on Counts Five and Eight of the counterclaim will be granted in favor of Waukesha.

## Intentional Misrepresentation

Waukesha further moves for summary judgment on Counts Six and Seven of the counterclaim, the negligent misrepresentation and intentional misrepresentation claims.[2]

Gradall, in its response to the summary judgment motion, did not defend the claim for negligent misrepresentation. Therefore, the Court will grant summary judgment in favor of Waukesha on that claim.

Intentional misrepresentation requires proof of three elements:

(1) there must be a false representation of fact;

(2) it must be made with intent to defraud and for the purpose of inducing another to act upon it; and

(3) the other person must rely on it and thereby be induced to act to his own injury or damage.

*Lundin v. Smimanski,* 124 Wis.2d 175, 184, 368 N.W.2d 676, 680–81 (1985). Element one is proved "by showing that the representation was of a fact, was made by the defendant and was untrue." *P.H. Glatfelter Co. v. Voith, Inc.,* 784 F.2d 770,

---

**2.** Waukesha does not argue that these claims are barred for the same reasons as the negligence and strict liability claims.

774 (7th Cir.1986). A cause of action for this type of fraud does not exist when it is based upon unfulfilled promises or statements regarding future events unless the purchaser has a right to rely on the promises and the promiser has the present intent not to perform at the time the promises are made. *Alropa Corp. v. Flatley,* 226 Wis. 561, 566, 277 N.W. 108, 110 (1937). Representations "cannot constitute misrepresentations [if] they are promises of future performance rather than assertions of existing fact." *Polycon Industries Inc. v. Hercules, Inc.,* 471 F.Supp. 1316, 1322 (E.D.Wis.1979). Thus, a misrepresentation claim cannot be based on an unfulfilled promise or future event. *Hartwig v. Bitter,* 29 Wis.2d 653, 656, 139 N.W.2d 644, 646 (1966). Gradall's counterclaim for intentional misrepresentation alleges that Waukesha represented that the engines were defect free, fit for ordinary purposes for which such engines are sold and used, and fit for use in Gradall's product. Answer and Counterclaim at pp. 13–14. Waukesha argues that these representations were future promises and thus as a matter of law are not actionable as intentional misrepresentations. To the extent Waukesha warranted the future performance of the engines, the Court would agree. But the evidence produced by Gradall is not limited to that respect. Gradall puts forth evidence that Waukesha made representations as to the design of the engine that were false at the time they were made. For example, 1981 literature from Waukesha regarding a new version of the VRD 220S engine stated:

> The previous engine had been used very successfully in industrial applications, but as with any new design of engine [sic], there is always a product requirement to further enhance its long-life industrial design. A complete study was made of all warranty and service history on the previous models of engine [sic] to insure that any problems which had existed were corrected.

Defendant's Exhibit 92 at p. 9. But the evidence shows that from 1981 through the time Gradall and Waukesha entered into their deal, numerous problems existed with the VRD 220S engine. An affidavit of Michael H. Grace, Parts and Services Manager of the Allis–Chalmers company, states that during 1981 and 1982 Allis–Chalmers purchased approximately 3,000 Waukesha engines, but that the engines experienced troubles within just a few hours of work. Grace Affidavit at para. 2–3. These problems included repeated failures in the head gaskets, head bolts, water pumps, cylinder liners, pistons, governors and oil pumps. *Id.* at 3. Furthermore, various Waukesha internal memoranda establish that the company was well aware of problems it had with the engines prior to the dealing with Gradall. *See* Defendant's Exhibits No. 26–30.

The Court finds that a proper misrepresentation claim can be maintained by Gradall on the basis of a misrepresentation of the present design of an engine of which Gradall was contemplating purchase. The Court further finds that on the basis of the record before the Court, Gradall has presented sufficient evidence that such a misrepresentation was made.[3] Therefore, the Court will deny summary judgment on the intentional misrepresentation claim.

*Punitive Damages*

Remaining is Waukesha's summary judgment motion on punitive damages. Waukesha contends that the claim for punitive damages should be dismissed as a matter of law since Gradall cannot establish proof of willful, wanton or reckless disregard for the rights of others, as required by Wisconsin law. *See Wagen v. Ford Motor Co.,* 97 Wis.2d 260, 298–99, 294 N.W.2d 437, 457 (1980). Gradall responds that if it is successful on the intentional misrepresentation claim, it may recover punitive damages. Gradall further argues that the Court should withhold ruling on the punitive damages claim until Gradall can present its full fraud claim at trial.

3. Neither party put forth argument or evidence on the question of whether Gradall knew the information was false. As the moving party, the burden was of course on Waukesha.

The Court does not agree that Waukesha should be foreclosed from summary judgment simply so Gradall may present its case in full at trial. Certainly the trial setting may afford Gradall a better opportunity to establish the willful, wanton or reckless conduct of Waukesha. But Gradall, in opposing a summary judgment motion, must be able to establish sufficient facts to create a triable issue on punitive damages.

In *Lundin v. Shimanski,* the Wisconsin Supreme Court held that punitive damages may be awarded where a fraudulent representation is made and relied on to induce a contract in willful, wanton, or reckless disregard of a plaintiff's rights. 124 Wis.2d at 196, 368 N.W.2d at 686. The court said the factors to be considered in making such an award are: grievousness of the defendant's act, the outrageousness of his conduct, and the degree of malicious intent. *Id.* Applying those factors to the case at hand, the Court finds that Gradall has established a sufficient factual basis for allowing the punitive damages question to go to trial. In particular, the Court finds that the evidence of the massive failure of the Waukesha engines sold to Allis–Chalmers prior to the Gradall transactions, combined with Waukesha's representation that the engine enjoyed a successful history, establish the inference that Waukesha proceeded in willful, wanton or reckless disregard of Gradall's rights. Summary judgment on the punitive damages claim will be denied.

### Summary

Based on the decision above, the Court finds:

1. No contract was created by the parties' exchange of forms.

2. A contract was created by the subsequent conduct of the parties.

3. Disputed issues of fact preclude the Court from finding on a motion for summary judgment that the conduct of the parties evidenced an acceptance of the terms of the Waukesha warranty through (a) a course of performance or dealing, or (b) Gradall's express assent.

4. Gradall's negligence and strict liability claims allege only economic losses arising from a commercial transaction. Under Wisconsin law, such claims are barred as a matter of law.

5. Gradall did not defend the motion for summary judgment on its negligent misrepresentation claim. As such summary judgment on that issue will be granted.

6. Disputed issues of fact preclude summary judgment on Gradall's intentional misrepresentation and punitive damages claims.

Accordingly, the Court hereby GRANTS summary judgment in favor of Waukesha on Counts Five, Six and Eight of Gradall's counterclaim. Waukesha's motion for summary judgment on Counts One, Two, Three, Four, Seven and Nine is hereby DENIED.

In order to schedule further proceedings in this case, the Court will hold a status conference at *9:30 a.m. on Thursday, January 19, 1989,* in Room 390, Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin. In the interim, the parties shall prepare a proposed Fed.R.Civ.P. 16 scheduling order as discussed at the Court's October 16, 1988 conference.

SO ORDERED.