**F. D. McKENDALL LUMBER CO.**

v.

**Robert KALIAN d/b/a et al.**

**No. 79–107–Appeal.**

Supreme Court of Rhode Island.

Feb. 2, 1981.

---

Kenneth M. Beaver, Providence, for plaintiff.

Aram K. Berberian, Michael J. Kiselica, Warwick, for defendants.

OPINION

MURRAY, Justice.

The plaintiff, F. D. McKendall Lumber Company (McKendall), initiated this civil action to recover money that the defendant, Robert Kalian d/b/a Inner City Development and Alta Builders (Kalian), allegedly owed McKendall for sales and deliveries of building materials. After a hearing on the merits of the plaintiff's claims on February 5, 1979, a justice of the Superior Court entered judgment for the plaintiff in the amount of $1,448.19 on the Inner City Development account and $7,598.43 on the Alta Builders account.[1] The trial justice also found the defendant liable for costs and interest computed at 6 percent per annum from August 7, 1976, the date of the filing of the complaint, until February 5, 1979, the date of the entry of the judgment.

Kalian does not dispute the fact that he purchased the materials from McKendall and that he owed plaintiff money on account. The sole issue presented by defendant's appeal is whether the trial justice erred in awarding plaintiff 18 percent interest on the principal amount from the due date up until the date plaintiff filed its complaint.

Joseph Coster, McKendall's office manager, was called as a witness by and for plaintiff. His testimony can be summarized as follows. Whenever a customer makes a purchase at McKendall Lumber, five copies of the sales slip are made. Three copies remain in the office, one is given to the customer, and the fifth, the "delivery receipt," is shipped with the merchandise for the customer to sign upon his receipt of the merchandise. After the delivery receipt is signed by the customer, it is returned to the office. There, it is used to charge the account with the balance reflected on these receipts. The amounts shown on these cards are posted on a ledger card kept for each account.

---

1. These figures represent the actual sales charges plus interest computed at 18 percent per annum up until the date of the complaint.

Coster testified that there were two ledger cards upon which defendant's name appeared. One card, kept for the Inner City Development account, showed a balance due in the amount of $1,643.29. The other card, kept for the Alta Builders account, showed a balance due of $8,343.11. All of the delivery receipts, sales slips, and ledger cards for these two accounts were introduced into evidence as full exhibits. Coster also testified that it was McKendall's practice to send out bills every month to each of its customers. Such monthly bills reflected the amount of interest charged. It is uncontradicted that defendant made payments on the accounts without objection up until the date of the filing of the complaint.

The plaintiff's witness, Coster, was the only witness called by either party to testify at trial. At the close of .evidence, plaintiff stated that it was seeking recovery of the balance due on the account until the time the complaint was filed and 6 percent interest thereafter.

In support of its claim, plaintiff pointed out the fact that the following statement appeared on all of the delivery receipts. "All past due accounts are subject to a 1½% finance charge which is an annual percentage rate of 18%." The plaintiff argued that defendant had signed these slips and that by doing so he had agreed to be bound by the terms and conditions included therein.

The defendant argued both at trial and before us that although he signed the delivery receipts, such receipts were not legally binding. In the absence of a binding agreement, defendant continues, he can only be charged 6 percent per annum, as provided for in G.L.1956 (1969 Reenactment) § 6–26–1.[2]

---

**2.** General Laws 1956 (1969 Reenactment) § 6–26- 1 provides:

"Legal rate of interest.—Interest in the rendition of judgments, and in all business transactions where interest is secured or paid, shall be computed at the rate of six dollars ($6.00) *on one hundred dollars ($100) for one (1) year, unless a different rate is expressly stipulated.*"

**3.** General Laws 1956 (1969 Reenactment) § 6A–2–206(1)(b) provides:

The scope of our review in this matter is limited by our well-recognized and oft-cited holding in *Raheb v. Lemenski,* 115 R.I. 576, 350 A.2d 397 (1976), that the findings of fact made by a trial justice are entitled to great weight and will not be disturbed by this court on appeal unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence. *Id.* at 579, 350 A.2d at 399.

Because it involved the sale of goods, this contract is controlled by Article 2 of the Uniform Commercial Code, G.L.1956 (1969 Reenactment) §§ 6A–2–101 through 6A–2–725. It cannot be disputed that there was a contract between the parties. By ordering the goods, defendant extended an offer that could be accepted either by a prompt promise to ship or by shipment itself. General Laws 1956 (1969 Reenactment) § 6A–2–206(1)(b).[3] The plaintiff did in fact accept this offer by timely shipping conforming goods to defendant; however, there was nothing in this contract that indicated at what rate of interest past-due accounts would be charged.

Because the delivery receipts supplied this additional term, we turn to § 6A–2–207 for guidance. That section provides:

"6A–2–207. Additional terms in acceptance or confirmation.—(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the. additional or different terms.

"Offer and acceptance in formation of contract.—(1) Unless otherwise unambiguously indicated by the language or circumstances * * * (b) an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods, but such a shipment of non-conforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer."

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(a) the offer expressly limits acceptance to the terms of the offer;

"(b) they materially alter it; or

"(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provision of title 6A."

The trial justice made no finding as to whether defendant was a merchant within the meaning of § 6A–2–104,[4] and there is no evidence in the record to indicate that he was a "merchant." Thus, the first sentence of § 6A–2–207(2) is controlling and the additional terms included in the delivery receipts became proposals for addition to the contract.

■ Kalian concedes that he or his agents signed the delivery receipts. We note here the general rule that a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents. See *D'Aloisio v. Morton's Inc.*, 342 Mass. 231, 172 N.E.2d 819 (1961) (storage receipts); Calamari and Perillo, *Contracts* § 9–42 at 328–29 (2d ed. 1977). One exception to this rule is that the provisions contained in the document must be printed in such a way as to be likely to come to the attention of the party receiving

it. *See Lisi v. Alitalia-Linee Aeree Italiane*, 370 F.2d 508, 513–14 (2nd Cir. 1966) (footnotes in tickets and baggage claims printed in such a manner as to be unreadable held not sufficient to put the ticket holders on notice of the provisions therein); *Tri-City Renta-Car and Leasing Corp. v. Vaillancourt*, 33 A.D.2d 613, 304 N.Y.S.2d 682 (1969) (held that a party should not be bound by clauses printed on the reverse side of a document unless it is established that such matter was properly called to his or her attention).

In this case the trial justice found that

"[t]he various documents that are in evidence of Plaintiff's # 1 [including the delivery receipts] are in very clear letters and have heavy lettering in some areas, and it speaks for itself. It states, 'All past due accounts are subject to a one and a half percent finance charge,' and that is heavily printed which is an annual percentage rate of 18 percent, and that is very heavy. I think that is the largest letters that appear on these documents, so that—[A]nd then they go way back over a period of time. There are some that have defendant's signature, and the Court is ruling that in the accepting of the delivery of these items he agreed to be bounded [sic] by the terms as set forth in this document. *No question in the Court's mind that he knew they were supposed to be paid.*" (Emphasis added.)

It is clear from the record that such findings were not clearly wrong and that the trial justice, in reaching these conclusions, did not overlook or misconceive material evidence. Practically all of plaintiff's evidence was uncontradicted. The record shows that defendant's account was set up as long ago as January 1973 and that on the twenty-fifth of every month McKendall sent out statements to its customers. Such statements reflected the balance due on each account, including the interest

---

4. General Laws 1956 (1969 Reenactment) § 6A–2–104(1) provides:

"(1) 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

charges. Kalian made payments on these accounts over a period of years without objection.

On the basis of the uncontroverted facts above, we can only conclude that defendant, by his course of conduct, manifested his assent to the proposed additional terms. At the very least, Kalian's continued payments without objection on these accounts over a period of years is "adequate to support the conclusion, as a matter of law, that a course of conduct, dealing, or performance was established within the meaning of the applicable provisions of the *Uniform Commercial Code* * * *."[5] *Johnson Tire Service Inc. v. Thorn, Inc.*, 613 P.2d 521, 523–24 (Utah 1980).

We conclude that Kalian, through his continued receipt of the goods and his signing of the delivery receipts, coupled with his payment of the monthly statements without objection over a period of years, manifested his assent to the proposed additional terms to the contract, and thereby became bound by them.[6]

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court.

---

5. General Laws 1956 (1969 Reenactment) § 6A–2–208(1) and (2) provide:

"Course of performance or practical construction.—(1) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

"(2) The express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance and course of performance shall control both course of dealing and usage of trade (§ 6A–1–205)."

6. Even if we were to determine that Kalian was a merchant within the meaning of G.L.1956 (1969 Reenactment) § 6A–2–104(1), and that the terms included in the delivery receipts materially altered the contract under § 6A–2–207(2), it is clear that by receiving the goods and paying for them without objection over a period of several years, Kalian accepted this counter offer and all of its terms, including interest on past due accounts at the rate of 18 percent per annum. *Roto-Lith, Ltd. v. F. P. Bartlett & Co.*, 297 F.2d 497 (1st Cir. 1962); *Gilbert & Bennett Manufacturing Co. v. Westinghouse Electric Corp.*, 445 F.Supp. 537, 546 (D.Mass.1977).