The **LEONARD PEVAR COMPANY,**
Plaintiff,

v.

**EVANS PRODUCTS CO., Defendant.**

Civ. A. No. 80–290.

United States District Court,
D. Delaware.

Oct. 13, 1981.

David R. Hodas of Potter & Carmine, P. A., Wilmington, Del., for plaintiff.

William H. Sudell, Jr. and Francis Babiarz of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

This is a diversity action[1] by the Leonard Pevar Company ("Pevar") against the Evans Products Company ("Evans") for an alleged breach of express and implied warranties in Evans' sale to Pevar of medium density overlay plywood. Defendant denies liability, claiming that it expressly disclaimed warranties and limited its liability in its contract with Pevar. The parties agree that their respective rights and liabilities in this action are governed by the Uniform Commercial Code.[2] The parties have filed cross motions for summary judgment pursuant to Rule 56, F.R.Civ.P.[3] This Court will deny both motions because it finds material facts that are in genuine dispute.

## I. FACTS

In the fall of 1977, Pevar began obtaining price quotations for the purchase of medium density overlay plywood to be used in the construction of certain buildings for the State of Pennsylvania.[4] As part of this process, Pevar's contract administrator, Marc Pevar, contacted various manufacturers of this product.[5] Evans was one of the manufacturers contacted and was the sup-

---

**1.** Jurisdiction exists by virtue of 28 U.S.C. § 1332.

**2.** Both Oregon and Pennsylvania, the only jurisdictions whose law might govern under the conflict of laws principles, have adopted the relevant portions of the Uniform Commercial Code in identical form.

**3.** Docket Item ("D.I.") 16 & 24.

**4.** D.I. 15 at 3, 7–9; D.I. 9, Nos. 20–23.

**5.** D.I. 15 at 7; D.I. 9, Nos. 20–23.

plier that quoted the lowest price for this material.[6]

On October 12, 1977, Marc Pevar had a telephone conversation with Kenneth Kruger of Evans to obtain this price quotation.[7] It is at this juncture that a material fact appears in dispute that precludes this Court from granting summary judgment. Pevar claims that on October 14 it again called Evans, ordered plywood, and entered into an oral contract of sale.[8] Evans admits that Pevar called Evans, but denies that Evans accepted that order.[9]

After the October 14th telephone conversation, Pevar sent a written purchase order to Evans for the plywood.[10] In the purchase order, Pevar did not make any reference to warranties or remedies, but simply ordered the lumber specifying the price, quantity and shipping instructions.[11] On October 19, 1979, Evans sent an acknowledgment to Pevar stating, on the reverse side of the acknowledgment and in boiler-plate fashion, that the contract of sale would be expressly contingent upon Pevar's acceptance of all terms contained in the document.[12] One of these terms disclaimed most warranties and another limited the "buyer's remedy" by restricting liability if the plywood proved to be defective.[13]

## II. STATUTE OF FRAUDS

■ Evans contends that if Pevar and Evans entered into an oral contract, it would be unenforceable because it would be in violation of the statute of frauds. Section 2–201(1) generally provides that an oral contract for the sale of goods in excess of $500 is unenforceable. Section 2–201(2), however, provides an exception. If a written confirmation is sent to. the receiving party, and the receiving party does not object to the confirmation within ten days, then the oral agreement may be enforceable. The Court finds that Pevar's written

---

6. D.I. 15 at 19–22.

7. D.I. 15 at 20–22; D.I. 9, No. 6.

8. D.I. 15 at 34–35.

9. Plaintiff Pevar asserts that "the undisputed evidence in the record establishes that on October 14, 1977 . . . Pevar . . . entered into an oral contract." D.I. 29 at 2. It asserts that Evans' denial is "simply a general denial" and is insufficient to preclude summary judgment on this issue. *Id.* The Court disagrees. Evans, in its Answers to Plaintiff's First Request for Admissions specifically denied that Kruger took an order from Pevar. D.I. 14, No. 3b. This assertion places a material fact in issue, thereby precluding summary judgment of this issue.

10. *See* D.I. 4, Exhibit C.

11. *See id.*

12. Paragraph 1 of the Acknowledgment provided:

 Any acceptance by Seller contained herein is expressly made conditional on Buyer's assent to the additional or different terms contained herein. Any acceptance by Buyer contained herein is expressly limited to the terms herein.

 *See* D.I. 4, Exhibit B.

13. Both of these terms were in boldface type:
 9. Unless seller delivers to buyer a separate written warranty with respect to goods, to the extent legally permissible the sale of all goods is "as is" and there is hereby excluded and seller hereby disclaims any express or implied warranty, including, without limiting the generality of the foregoing, any implied warranty of merchantability or any implied warranty of fitness for any particular use or purpose; provided, however, there is not hereby excluded or disclaimed any implied warranty that seller owns goods or any implied warranty that goods are free from any security interest or other lien or encumbrance of which buyer has no knowledge at the time of contracting to buy such goods.

 \* \* \*

 12. Buyer shall afford Seller prompt and reasonable opportunity to inspect Goods as to which any claim is made by Buyer. SELLER RESERVES THE RIGHT, IN ITS SOLE DISCRETION, WITHIN THE 90 CALENDAR DAY PERIOD FOLLOWING RECEIPT OF ANY CLAIM MADE BY BUYER, TO REPAIR ANY CLAIMED DEFECT IN GOODS OR TO SUBSTITUTE OTHER GOODS THEREFOR AND, BY MAKING SUCH REPAIR OR REPLACEMENT, SELLER SHALL HAVE NO FURTHER LIABILITY OR OBLIGATION TO BUYER WITH RESPECT TO SUCH GOODS, IF ANY DEFECTIVE GOODS ARE NOT SO REPAIRED OR REPLACED BY SELLER, SELLER'S LIABILITY AND OBLIGATION SHALL BE LIMITED TO THE STATED PURCHASE PRICE OF SUCH GOODS, AND BUYER SHALL BE OBLIGATED AT ITS EXPENSE TO RETURN THE GOODS TO SELLER, SELLER SHALL IN NO EVENT BE LIABLE OR OBLIGATED FOR BUYER'S MANUFACTURING COSTS, LOST PROFITS, GOOD WILL OR OTHER INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES.

 *See id.*

purchase order constituted a confirmatory memorandum[14] and Evans' acknowledgment failed to provide sufficient notice of objection to Pevar's confirmation. The acknowledgment did not deny expressly the existence of the purported contract; rather, it merely asserted additional terms.[15] Thus, the statute of frauds will not bar Pevar from proving the existence and terms of the contract for the reasons given in *Marlene Industries Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239, 240 (1978) where the Court stated:[16]

> This case presents a classic example of the "battle of the forms," and its solution is to be derived by reference to section 2–207 of the Uniform Commercial Code which is specifically designed to resolve such disputes. ... [S]ubsection (2) of section 2–201 [is not applicable], for that statute deals solely with the question whether a contract exists which is enforceable in the face of a Statute of Frauds defense; it has no application to a situation such as this, in which it is conceded that a contract does exist and the dispute goes only to the terms of that contract. In light of the disparate purposes of the two sections, application of the wrong provision will often result in an erroneous conclusion. As has been noted by a recognized authority on the code, "(t)he easiest way to avoid the miscarriage this confusion perpetrates is simply to fix in mind that the two sections have nothing to do with each other. Though each has a special rule for merchants sounding very much like the other,

their respective functions are unrelated. Section 2–201(2) has its role in the context of a challenge to the use of the statute of frauds to prevent proof of an alleged agreement, whereas the merchant rule of section 2–207(2) is for use in determining what are the terms of an admitted agreement." (Duesenberg, General Provisions, Sales, Bulk Transfers and Documents of Title, 30 Business Law 847, 853).

*See also C. Itoh & Co. (America) Inc. v. Jordan International Co.*, 552 F.2d 1228, 1233 (C.A.7, 1977). Section 2–201, therefore, has no application to this case; this action involves the application of § 2–207.

## III. BATTLE OF THE FORMS

Turning now to Section 2–207, it provides:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

>> (a) the offer expressly limits acceptance to the terms of the offer;

>> (b) they materially alter it; or

---

**14.** Pevar's purchase order stated "this confirms my telcon order placed with your Mr. Kruger: do not duplicate." *See* D.I. 4, Ex. C.

**15.** Paragraphs 1 and 17 of Evans' acknowledgment do not constitute written notice of objection to Pevar's confirmation. Those paragraphs read:

　1. Any acceptance by Seller contained herein is expressly made conditional on Buyer's assent to the additional or different terms contained herein. Any acceptance by Buyer contained herein is expressly limited to the terms herein.

　　\*　\*　\*　\*　\*　\*

　17. This writing constitutes the entire agreement between the parties with respect to the subject matter hereof and all prior

representations have been merged herein (except that, if Seller delivers to Buyer a separate written warranty with respect to Goods, then this writing and such warranty constitute the entire agreement between the parties and all prior representations have been merged herein and in such warranty). This writing and such warranty, if any, may not be modified or terminated except by a writing signed by a duly authorized representative of Seller.
*See* D.I. 4, Ex. B.

**16.** Nevertheless, the burden of persuading the trier of fact remains on Pevar—the party asserting the existence of the contract.

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consists of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

Section 2–207 was intended to eliminate the "ribbon matching" or "mirror" rule of common law, under which the terms of an acceptance or confirmation were required to be identical to the terms of the offer or oral agreement, respectively. *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161 (C.A.6, 1972). The drafters of the Code intended to preserve an agreement, as it was originally conceived by the parties, in the face of additional material terms included in standard forms exchanged by merchants in the normal course of dealings. *Alan Wood Steel Co. v. Capital Equipment Enterprises Inc.*, 39 Ill.App.3d 48, 349 N.E.2d 627 (1976). Section 2–207 recognizes that a buyer and seller can enter into a contract by one of three methods. First, the parties may agree orally and thereafter send confirmatory memoranda. § 2–207(1). Second, the parties, without oral agreement, may exchange writings which do not contain identical terms, but nevertheless constitute a seasonable acceptance. § 2–207(1). Third, the conduct of the parties may recognize the existence of a contract, despite the previous failure to agree orally or in writing. § 2–207(3).

A. *Oral agreement followed by confirmation.*

Section 2–207(1) applies to those situations where an "oral agreement has been reached . . . followed by one or both of the parties sending formal memoranda embodying the terms so far as agreed upon and adding terms not discussed." Uniform Commercial Code, Comment 1 to § 2–207. These additional terms are treated as proposals under 2–207(2) and will become part of the agreement unless they materially alter it. *Dorton, supra*, 453 F.2d at 1169–70.[17]

In the present case, paragraphs 9 and 12 of Evans' acknowledgment, which disclaimed warranties and limited liability,[18] may include terms not in the original agreement. Generally, these types of clauses "materially alter" the agreement. Uniform Commercial Code, Comment 4 to § 2–207. Nevertheless, the question of a material alteration rests upon the facts of each case.[19] *See Dorton, supra*, 453 F.2d at 1169 n.8; *Medical Development Corp. v. Industrial Molding Corp.*, 479 F.2d 345, 348 (C.A.10, 1973); *Ebasco Services Inc. v.*

---

**17.** The "unless" proviso in § 2–207(1) does not apply to confirmatory memoranda because the parties have already entered into an agreement and one party does not have the power pursuant to § 2–207 to terminate it unilaterally:

> Confirmation connotes that the parties reached an agreement before exchange of the forms in question. The purpose of the Code drafters here must have been to make clear that confirmations need not mirror each other in order to find contract. Simply stated, then, under this first clause of section 2–207(1) it is reasonable to assume that the parties have a deal, that there is a contract even though terms of the writing exchanged do not match. All of the language following the comma in subsection (1) simply preserves for the offeree his right to make a counter-offer if he does so expressly. This phrase cannot possibly effect the deal be-

tween parties that have reached an agreement and then exchanged confirmations. In that situation it is too late for a counter-offer and subsection (2) must be applied to determine what becomes of the non-matching terms of the confirmations.

*Air Products & Chemical, Inc. v. Fairbanks Morse, Inc.*, 58 Wis.2d 193, 206 N.W.2d 414, 422–23 (1973), *quoting Section 2–207 of the Uniform Commercial Code—New Rules for the "Battle of the Forms"*, 32 U.Pitt.L.Rev. 209, 210 (1971).

**18.** *See* note 13 *supra.*

**19.** Therefore, even if there were no dispute that the oral agreement existed, the question of materiality would preclude the Court from granting summary judgment.

*Pennsylvania Power & Light Co.*, 402 F.Supp. 421, 442 (E.D.Pa.1975). If the trier of fact determines that the acknowledgment includes additional terms which do not materially alter the oral agreement, then the terms will be incorporated into the agreement. If they materially alter it, however, the terms will not be included in the agreement, and the standardized "gap filler" provisions of Article Two will provide the terms of the contract. If the facts reveal that no oral agreement was created, then § 2–207(1) may still apply, but in a different manner.

**B.** *Written documents not containing identical terms.*

The second situation in which § 2–207(1) may apply is where the parties have not entered into an oral agreement but have exchanged writings which do not contain identical terms. If the Court determines that Pevar and Evans did not orally agree prior to the exchange of documents, then this second situation may apply. In such a case, both Pevar and Evans agree that Pevar's purchase order constituted an offer to purchase. The parties, however, disagree with the characterization of Evans' acknowledgment and Pevar's acceptance of and payment for the shipped goods. Evans contends that the terms disclaiming warranties and limiting liability in the acknowledgment should control because the acknowledgment constituted a counteroffer which Pevar accepted by receiving and paying for the goods. Evans argues that by inserting the "unless" proviso[20] in the terms and conditions of acceptance of the acknowledgment, it effectively rejected and terminated Pevar's offer, and initiated a counteroffer; and when Pevar received and paid for the goods, it accepted the terms of the counteroffer.

Evans relies upon *Roto-Lith, Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497 (C.A.1, 1962) for the proposition that a buyer accepts the terms of the seller's counteroffer merely by receiving and paying for shipped goods. In *Roto-Lith*, the buyer of goods sent a written purchase order to the seller. The seller thereafter sent an acknowledgment, accepting the purchase order in part, but also added terms which disclaimed warranties and limited liabilities. The buyer received the goods but did not object to the seller's terms. The court found that the seller's acceptance (acknowledgment) was expressly conditional on assent to the additional terms and, therefore, a counteroffer. It held that the buyer accepted the terms of the counteroffer when it received and paid for the goods.

■ *Roto-Lith* has been widely criticized because it does not reflect the underlying principles of the Code. Rather, it reflects the orthodox common law reasoning—that the terms of the counteroffer control if the goods are accepted unless the counterofferee specifically objects to those terms. The drafters of the Code, however, intended to change the common law in an attempt to conform contract law to modern day business transactions. They believed that businessmen rarely read the terms on the back of standardized forms and that the common law, therefore, unduly rewarded the party who sent the last form prior to the shipping of the goods. The Code disfavors any attempt by one party to impose unilaterally conditions that would create hardship on another party. Thus, before a counteroffer is accepted, the counterofferee must expressly assent to the new terms.

■ This Court joins those courts that have rejected the *Roto-Lith* analysis. *Itoh, supra*, 552 F.2d at 1235; *Dorton, supra*, 453 F.2d at 1166; *Uniroyal, Inc. v. Chambers Gasket & Manufacturer Co.*, 380 N.E.2d 571, 577–78 (C.A.Ind.1978); *Falcon Tankers Inc. v. Litton Systems, Inc.*, 355 A.2d 898, 906 (Del.Super.1976). *See also Construction Aggregates Corp. v. Hewitt-Robbins Corp.*, 404 F.2d 505 (C.A.7), *cert. denied*, 395 U.S. 921, 89 S.Ct. 1774, 23 L.Ed.2d 238 (1969). "It finds that [t]he consequence of a clause

---

**20.** Section 2–207(1) "unless" proviso provides: "unless acceptance is expressly made conditional on assent to the additional or different terms." Evans followed this language in its acknowledgment.

conditioning acceptance on assent to the additional or different terms is that *as of the exchanged writings there is no contract.* Either party may at this point in their dealing walk away from the transaction" or reach an express assent. *Itoh,* at 1236, quoting *Duesenberg & King, Sales & Bulk Transfer* (Bender) § 3.06(3) at 73. Without the express assent by the parties no contract is created pursuant to § 2–207(1).[21] Nevertheless, the parties' conduct may create a contract pursuant to § 2–207(3).

### C. *Conduct establishing the existence of a contract.*

Section 2–207(3) is the third method by which parties may enter into a contract. This section applies when the parties have not entered into an oral or written contract. Section 2–207(3) provides that "[c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writing of the parties do not otherwise establish a contract." As *Dorton, supra,* 453 F.2d at 1166 noted:

> When no contract is recognized under Subsection 2–207(1) . . . the entire transaction aborts at this point. If, however, the subsequent conduct of the parties—particularly, performance by both parties under what they apparently believe to be a contract—recognizes the existence of a contract, under Subsection 2–207(3), such conduct by both parties is sufficient to establish a contract, notwithstanding the fact that no contract would have been recognized on the basis of their writings alone.

Section 2–207(3) also provides that where a contract has been consummated by the conduct of the parties, "the terms of the particular contract consist of those terms in which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act."

In this case, the parties' conduct indicates that they recognized the existence of a contract. If this Court finds after trial that Pevar and Evans did not enter into an oral agreement, Section 2–207(3) will apply. The terms of the contract will include those terms in which Pevar's purchase order and Evans' acknowledgment agree. For those terms where the writings do not agree, the standardized "gap filler" provisions of Article Two will provide the terms of the contract. *Itoh, supra,* 552 F.2d at 1237.[22]

An Order will be entered in accordance with this Memorandum Opinion.

---

**21.** Pevar and Evans had conversations subsequent to the shipping of the goods where Pevar did not object to the terms of Evans' acknowledgment. Evans, relying upon *Construction Aggregates, supra,* contends that Pevar's failure to object to the acknowledgment during these subsequent conversations constitutes an implicit acceptance of those terms. The facts in *Construction Aggregates* are readily distinguishable from the facts in this case. In that case, the buyer specifically objected to some terms of the acknowledgment, while remaining silent on the others. The court found that the purchaser thereby agreed to those terms in which it remained silent. Contrasting *Construction Aggregates*, Pevar and Evans did not specifically discuss Evans' acknowledgment. Thus, there is no basis to hold that Pevar consented to those terms.

**22.** *See e.g.,* §§ 2–314, 315 & 715.