**PROVIDENCE & WORCESTER RAILROAD COMPANY, Plaintiff,**

v.

**SARGENT & GREENLEAF, INC., Defendant.**

**Civ. A. No. 90–0647L.**

United States District Court, D. Rhode Island.

Oct. 7, 1992.

---

Howard E. Walker, R.M. Duffy, Hinckley, Allen, Snyder & Comen, Providence, R.I., for plaintiff.

Brad Cowgill, Wyatt, Tarrant & Combes, Lexington, Ky., Michael Civittolo, Providence, R.I., for defendant.

## MEMORANDUM & ORDER

LAGUEUX, District Judge.

### INTRODUCTION

This matter is presently before the court on the motion for summary judgment filed by defendant, Sargent & Greenleaf, Inc., ("Sargent & Greenleaf") pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Providence & Worcester Railroad Company ("Providence & Worcester") initiated this diversity action seeking damages for a train derailment which it alleges was proximately caused by the failure of a switchlock sold to it by Sargent & Greenleaf. The complaint includes counts based on breach of contract, breach of express and implied warranties, and negligence. Sargent & Greenleaf now moves for summary judgment on the contract and warranty claims contending that they are

barred by the statute of limitations and by the warranty disclaimer contained in the contract. Sargent & Greenleaf also claims that it is entitled to partial summary judgment on any counts that survive limiting its liability to replacement of the allegedly defective lock.

## BACKGROUND

This action arises from the sale of certain switchlocks by Sargent & Greenleaf, based in Kentucky, to Providence & Worcester, based in Rhode Island. These locks were used to secure track switches that are part of the system for directing trains from one track to another. One such lock was used to secure a switch at a side track in Dayville, Connecticut. On November 17, 1990, a vandal picked this lock in under two minutes, and "threw" the switch secured by it. The next day, a Providence & Worcester freight train was derailed as a result of the switch having been "thrown." The derailment caused nearly $1,000,000 in property damage, but fortunately no personal injuries occurred.

Providence & Worcester's contract claims are based on statements made in various advertising materials it received from Sargent & Greenleaf. Those statements attest in various forms to the lock's endurance and resistance to vandals, and include a statement that the lock meets padlock specifications proposed by the American Society for Testing and Materials ("ASTM"). Those specifications provide, among other things, that even after 10,000 operating cycles the lock cannot be picked by an amateur in less than 4 minutes.

By a printed form purchase order dated November 1986, Providence & Worcester ordered 198 switch locks from Sargent & Greenleaf at $20.95 each. Sargent & Greenleaf sent a form acknowledgement of the purchase order to Providence & Worcester dated December 3, 1986. Sargent & Greenleaf additionally sent an invoice form dated December 15, 1986 to Providence & Worcester with the shipment of locks. The shipment was delivered to Providence & Worcester on December 22, 1986.

The front side of Sargent & Greenleaf's forms contained the printed words "acceptance subject to terms and revisions on reverse side." The reverse side of these forms were entitled "CONDITIONS GOVERNING THE ACCEPTANCE OF ALL ORDERS" and contained provisions which 1) disclaimed express and implied warranties 2) limited remedies to repair or replacement of defective goods and 3) stated that the contract would be governed by Kentucky law. In addition, two clauses stipulated that the document constituted the entire agreement between the parties, and that it was not subject to modification.

Providence & Worcester filed a five count complaint in this action on December 31, 1990. Count I alleges that Sargent and Greenleaf breached its contract with Providence & Worcester by failing to provided it with locks of the quality and characteristics promised. Count II alleges breach of express warranties contained in various oral and written representations to Providence & Worcester. Counts III and IV allege breach of the implied warranties of merchantability and fitness for a particular purpose, respectively. Count V alleges that Sargent & Greenleaf was negligent in the design, manufacture and testing of its locks, and knew or should have known that the locks were defective and did not meet the warranties. Contrary to the assertion in plaintiff's memorandum, the complaint does not contain a count based on strict products liability.

Sargent & Greenleaf has moved for summary judgment on the warranty claims, arguing that they are barred by the warranty disclaimer contained in its acknowledgement. Sargent & Greenleaf also argues that the contract and warranty actions are barred by the applicable four year statute of limitations, since the cause of action accrued at delivery, December 22, 1986, and the action was not filed until December 31, 1990. Finally, Sargent & Greenleaf argues that recovery on any theory is limited by the contract to repair or replacement of the defective lock, and Providence & Worcester is barred from

obtaining consequential damages.[1] Providence & Worcester argues that the provisions relied upon by Sargent & Greenleaf are not in fact part of the contract, and that its contract claims accrued after delivery.

The parties engaged in oral argument on May 21, 1992. At the conclusion of oral argument this Court took the matter under advisement. It is now in order for decision.

## I. Choice of Law

■■■ A federal court sitting in a diversity case must apply the law of the forum state, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including that state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Rhode Island's Supreme Court has held that the parties to a contract may stipulate to have their contract interpreted by the law of a specific state, if that state bears some real relationship to the contract, and if the law of the chosen state is not contrary to the public policy of the forum state. *Owens v. Hagenbeck-Wallace Shows Co.*, 58 R.I. 162, 174, 192 A. 158 (1937). In the absence of such a stipulation, Rhode Island courts will apply the law of the state where the contract was completed. *Tim Hennigan Co. v. Anthony A. Nunes, Inc.*, 437 A.2d 1355 (R.I.1981). Thus, this Court must determine which of the documents and acts in question created the contract as a matter of Rhode Island law.

### A. Rhode Island Commercial Code

■■■ The contract in question is governed by Section 2 of the Rhode Island Commercial Code, R.I.G.L. §§ 6A-2-101 to 6A-2-725 (1985) (enacting Uniform Commercial Code Sections 2-101 to 2-725), on the sale of goods. Section 6A-2-207 applies when there is an issue involving a "battle of the forms." That section states in full:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;

(b) They materially alter it; or

(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplemental terms incorporated under any other provisions of Title 6A.

Under section 2-207(1), a form acknowledgement is ordinarily considered an acceptance of the order, even if it states different or additional terms. Section 2-207(2) determines whether those terms become part of the contract. In this case, where both parties are merchants[2] and there has

---

1. This argument by its terms applies to the negligence as well as the contract and warranty claims. However, the parties have not addressed this matter sufficiently for the court to rule on this issue. In particular, the parties have not addressed the issue of what law should apply to the tort action, nor any authority supporting or attacking the theory that tort recovery should be limited by such a contractual provision. For this reason, this opinion addresses only the contract and warranty claims of the complaint, Counts I–IV.

2. Providence & Worcester asserts that it should not be construed as a "merchant" under the Rhode Island Commercial Code. This assertion is incorrect. Comment 2 of the R.I.G.L. Section 6-A-2-104 calls for an expansive definition of "merchant:"

Sections 2-201(2), 2-205, 2-207 and 2-209 dealing with the statute of frauds, firm offers,

been no expression of objection from the offering party, those terms would become part of the contract unless they materially alter the agreement.

However, section 2–207(1) provides an exception to the acceptance rule where "acceptance is expressly made conditional on assent to the additional or different terms." In the instant case, both parties have agreed that Sargent & Greenleaf's acknowledgement was "expressly made conditional on assent." This Court agrees with that assessment. The front side of Sargent & Greenleaf's forms contained the words "acceptance subject to terms and revisions on reverse side." The reverse side contained two provisions limiting the agreement to the terms of the acknowledgement:

### 7. MODIFICATION OF TERMS AND CONDITIONS

This document contains the entire agreement of Seller and Buyer and no other agreement or other understanding in any way modifying the terms and conditions set forth herein shall be binding upon Seller unless made in writing and signed by Seller's authorized agent or officer.

### 8. TERMS AND CONDITIONS OF ACCEPTANCE TO GOVERN

The terms and conditions of this acceptance shall apply to and govern Buyer's order, and in case of any inconsistency between said terms and conditions and the provisions of Buyer's order, the said terms and conditions of the acceptance shall prevail.

As defendant's memorandum states, "it is hard to imagine what further language could be required to show that acceptance was expressly conditional on assent to these terms." (Def.Mem. at 12).

Although the parties agree that acceptance was expressly made conditional, they disagree on the effect of that fact. Providence & Worcester argues that if Sargent & Greenleaf's acknowledgement did not constitute an acceptance, there was no contract based on the writing of the parties. This, it contends, propels this contract into the ambit of Section 2–207(3), which provides that where a contract is found based on the conduct of the parties, its terms are those on which the writings of the parties agree, and those that the U.C.C. incorporates into the agreement. Sargent & Greenleaf contends that the acknowledgement form actually was a counteroffer, which was accepted on all of its terms by Providence & Worcester when it took delivery of and paid for the goods.

The Rhode Island Supreme Court has not ruled on this issue, so it is this Court's task to predict what the decision of that Court will be when it is faced with this question. "In undertaking this forecast, the court must look to relevant, i.e. analogous, state court decisions ... and may assay sister state adjudications of the issue." *Hart Engineering Co. v. FMC Corp.*, 593 F.Supp. 1471, 1482 (D.R.I.1984).

In *Roto–Lith, Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497 (1st Cir.1962) the First Circuit in interpreting the Massachusetts enactment of Section 2–207 found that the acknowledgement in question was "expressly ... conditional on assent to the additional ... terms." The Court then held that by accepting the goods after receiving and signing the form in question, the buyer accepted with knowledge of the conditions specified in the acknowledgement and became bound by those terms. *Id.* at 500. This case has been interpreted to stand for the general proposition that "a commercial contract incorporates all terms included in an acknowledgement of a purchase order,

confirmatory memoranda and modification rest on normal business practices which are or ought to be typical of and familiar to any person in business. For purposes of these sections, almost every person in business would, therefore, be deemed to be a 'merchant' under the language 'who ... by his occupation holds himself out as having knowledge or skill peculiar to the practices

... involved in the transaction ...' since the practices involved in the transaction are non-specialized business practices such as answering mail. In this type of provision, banks or even universities, for example, well may be 'merchants.'

The plaintiff falls within this broad definition of "merchant."

as long as the buyer does not object to the additional conditions or otherwise withdraw its order." *Logan Equipment Corp. v. Simon Aerials, Inc.,* 736 F.Supp. 1188, 1195 (D.Mass.1990).

Although *Roto–Lith* is not binding precedent in Rhode Island, it has been cited with approval by the Rhode Island Supreme Court. In *F.D. McKendall Lumber Co. v. Kalian,* 425 A.2d 515 (R.I.1981), the Court held that a buyer was bound by the 18% interest rate provision contained in the delivery receipt. Although the Court relied on the fact that the buyer's payment on accounts over the years was a "course of conduct, dealing, or performance" within the meaning of the U.C.C., it also stated in a footnote, "by receiving the goods and paying for them without objection over a period of several years, Kalian accepted this counteroffer and all of its terms." *Id.* at 519 n. 6 (citing *Roto–Lith* ).

This Court has previously found *Roto–Lith* to be persuasive authority on the law of Rhode Island. In *Scott Brass, Inc. v. C & C Metal Products Corp.,* 473 F.Supp. 1124 (D.R.I.1979), Judge Pettine held that a buyer would not be bound by a pre-printed clause stating that the price might vary, where the parties had orally agreed to a firm price, and where the buyer objected to the change in price upon invoicing. He distinguished *Roto–Lith,* stating, "*Roto–Lith* does not require [that the buyer be bound by additional terms] where there has been a timely objection." *Id.* at 1129. In *Taft–Peirce Mfg. Co. v. Seagate Technology, Inc.,* 789 F.Supp. 1220 (D.R.I.1992), Judge Pettine again distinguished *Roto–Lith* in concluding that the cancellation form in a purchase order was not a term of the contract. He stated that "unlike *Roto–Lith,* the cancellation clause ... was not an expressed condition to its acceptance," *id.* at 1225, although arguably under the standards of *Roto–Lith* the term should have been considered "expressly ... conditional."

This Court is aware of the criticism of the *Roto–Lith* decision by various courts and commentators. See *Daitom, Inc. v. Pennwalt Corporation,* 741 F.2d 1569, 1578 (10th Cir.1984) (criticizing *Roto–Lith*'s construction of the term "expressly made conditional"); *PolyClad Laminates Inc., v. Vits Maschinenbau GmbH,* 749 F.Supp. 342, 344 (D.N.H.1990) ("*Roto–Lith* does not control here ... the decision has been widely criticized as an incorrect application of § 2–207; its value as precedent is therefore uncertain"); *Leonard Pevar Co. v. Evans Prod. Co.,* 524 F.Supp. 546, 551 (D.Del. 1981) ("*Roto–Lith* ... does not reflect the underlying principles of the Code.... The Code disfavors any attempt to impose unilaterally conditions that would create hardship on another party."); James J. White and Robert S. Summers, *Uniform Commercial Code* 28 (1980) (referring to *Roto–Lith* as "the infamous case"). White and Summers criticize the decision for giving one party, who fortuitously sent the second document, all of his terms. White & Summers, supra, at 34. However, White and Summers also admit that they "see no way to apply 2–207 that does not *in some cases* give an unearned and unfair advantage to the person who happens to send the first, or in some cases the second, document." *Id.* at 38 (emphasis in original). *Roto–Lith* is not without merit. In this case, Providence & Worcester would be given an "unfair and unearned advantage" by a rule that gives no effect to Sargent & Greenleaf's terms, where Providence & Worcester made no objection and supplied no terms of its own. Section 2–207 is clearly intended to give some effect to form provisions. Even if Sargent & Greenleaf had not insisted upon acceptance of its terms as a condition of entering this contract, many of its terms would govern the agreement under Section 2–207(2). Under Providence & Worcester's analysis, the fact that Sargent & Greenleaf did insist upon acceptance of its terms should mean that *none* of those terms govern. This clearly defeats the reasonable expectations of the parties to this transaction.

The application of the principles embodied in the *Roto–Lith* decision to our case persuades this Court to conclude that Sargent & Greenleaf's acknowledgement and invoice forms conditioned its participation in the agreement on Providence & Worces-

ter's acceptance of those terms. Stated succinctly, Sargent & Greenleaf's response to Providence & Worcester's order became a counteroffer. Providence & Worcester had the opportunity to accept or reject this counteroffer or make its own counteroffer. Providence & Worcester chose to accept Sargent & Greenleaf's counteroffer by accepting the locks, paying for the locks and using the locks without objection to the additional terms. Performance of the contract became the acceptance. Thus, the warranty disclaimers, remedy limitations and choice of law provision became part of the contract between Sargent & Greenleaf and Providence & Worcester.

### B. Choice of law provision

■ This Court has determined, under the laws of Rhode Island, that the choice of law provision contained on the reverse side of Sargent & Greenleaf's acknowledgement and invoice forms is part of the contract between Sargent & Greenleaf and Providence & Worcester. This provision states that the contract is to be governed by Kentucky law. A choice of law provision is licit in Rhode Island. According to R.I.G.L. Section 6A–1–105, "when a transaction bears a reasonable relation to this state and also to another state ... the parties may agree that the law either of this state or of such other state ... shall govern their rights or duties." There is a reasonable relationship between the transaction at issue in this case and the state of Kentucky. Kentucky is Sargent & Greenleaf's principal place of business. The locks in question were designed and manufactured in Kentucky. The locks were shipped from Sargent & Greenleaf's location in Nicholasville, Kentucky to Providence & Worcester in this area.

Accordingly, this Court must apply the law of Kentucky to determine whether the disclaimer of warranty provision and the limitation of remedy provision contained in the contract between Sargent & Greenleaf and Providence & Worcester are congruous with the Kentucky Commercial Code, Ky. Rev.Stat.Ann. Sections 355.2–101 to 2–725 (Michie/Bobbs Merrill 1987) (U.C.C. Sections 2–101 to 2–725), and the court deci-

sions interpreting the Kentucky Commercial Code.

### II. Disclaimer of Warranties

Sargent & Greenleaf sought to disclaim any express or implied warranties not provided for in their acknowledgement and invoice forms through the following provision which appeared on the reverse side of its acknowledgement and invoice forms:

**2. WARRANTY**

Seller warrants that goods of its manufacture shall be free from defects in material and workmanship for one year from the date said goods are shipped from its factory ...

There are no other warranties, express or implied.

U.C.C. Section 2–316 governs the seller's rights to limit and exclude warranties, allowing a seller to incorporate into the parties' contract a disclaimer clause to control the seller's liability by reducing the number of situations in which the seller can be in breach.

### A. Implied Warranties

■ Sargent & Greenleaf can effectively limit any implied warranties if the limiting provision complies with Section 2–316(2). More specifically, Sargent & Greenleaf can disclaim the implied warranty of merchantability only if the disclaiming language "mention[s] merchantability and in case of a writing [it] must be conspicuous." Section 2–316(2) also states that Sargent & Greenleaf can disclaim the implied warranty of fitness for a particular purpose if the "exclusion is by writing and is conspicuous."

Sargent & Greenleaf's provision does not effectively disclaim the implied warranties. To begin, the provision does not mention the word "merchantability" as required by Section 2–316 to effectuate any provision disclaiming the implied warranty of merchantability. See *Leland Industries, Inc., v. Suntek Industries, Inc.,* 184 Ga.App. 635, 362 S.E.2d 441 (1987) (a disclaimer is not effective to disclaim the warranty of merchantability unless it expressly uses the word "merchantability"). For a similar

result see *Bazzini v. Garrant*, 116 Misc.2d 119, 455 N.Y.S.2d 77 (1982).

Additionally, the language is not conspicuous.[3] In *Massey–Ferguson, Inc. v. Utley*, 439 S.W.2d 57 (Ky.1969) a contract for the sale of a combine attachment contained an express warranty clause with a heading in capital letters that excluded all implied warranties. The Court held that this provision was not conspicuous because it was on the back of the contract form and was referred to by words in only ordinary type on the front. *Id.* at 59. Compare *Gooch v. Dowell, Inc.*, 743 S.W.2d 38 (Ky.Ct.App. 1988) (where a provision excluding warranties of merchantability and the implied warranty of fitness were considered conspicuous because the provision was in bold-face, entirely capitalized type and was twice as large as the other type on the backside of the form).

Sargent & Greenleaf's provision disclaiming any implied warranties does not meet the requirement set out in Section 2–316 and, therefore, the disclaiming language is not valid and is not binding on Providence & Worcester. The language was set out in ordinary type and did not contrast with the rest of the form in size or color. The front of the form refers to the disclaiming provision on the reverse side in small print. This reference appears inconsequential when compared to the remainder of the front side.

### B. Express warranties

■ Count II of the Complaint alleges breach of warranties contained in various written and oral representations made to Providence & Worcester. Plaintiff's briefs reveal that these claims are primarily based on advertising and promotional materials sent to it by Sargent & Greenleaf. These materials contained representations relating to the "pick-proof" nature of the lock, its ability to thwart "the most deter-

mined vandals" and its conformance to ASTM testing procedures.

■ According to the U.C.C., an express warranty may be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Section 2–313. It is well established that advertising may form a part of an express warranty. *Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758 (10th Cir.1983); *Ferguson v. Sturm Ruger & Co.*, 524 F.Supp. 1042, 1046 (D.Conn.1981); *Wiltshire v. A.J. Robins Co.*, 88 A.D.2d 1097, 453 N.Y.S.2d 72, 73 (1982). Whether such a warranty exists is ordinarily a question of fact. *Economy Housing Co. v. Continental Forest Products, Inc.*, 757 F.2d 200, 203 (8th Cir.1985); U.C.C. § 2–313 Official Comment 3.

■ Sargent & Greenleaf's warranty provision purported to disclaim all express warranties. Generally a seller may not disclaim an express warranty. Section 2–316(1) states:

(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this chapter on parol or extrinsic evidence (§ 2–202) negation or limitation is inoperative to the extent that such construction is unreasonable.

The express warranties alleged here are clearly inconsistent with the provision stating that no express warranties were made. Thus the negation of warranties is inoperative unless the provision on parol evidence applies.

■ Under Section 2–202, a written contract may not be contradicted by evidence of any prior agreement on "terms with respect to which the confirmatory memo-

---

**3.** According to Section 1–201(10) the word "conspicuous" is defined as:

(10) 'conspicuous:' A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is

conspicuous. Language in the body of the form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous.' Whether a term or clause is conspicuous or not is for decision by the court.

randa of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement." The question of whether the parties intended that a document will constitute the final expression of their agreement is one of fact, *Transamerica* at 763, but generally a form invoice is not so intended, at least not as to the preprinted, non-negotiated terms. *Id.* The representations made in Sargent & Greenleaf's promotional materials are therefore not excluded by the parol evidence rule, and the purported disclaimer is not effective.

### III. Statute of Limitations

■ Defendant also argues that this action is barred by the statute of limitations. As noted in defendant's brief, it is widely agreed that the law of the forum state determines the applicable statute of limitations. *Brown v. Merrow Machine Co.*, 411 F.Supp. 1162 (D.Conn.1976); *Haeberle v. St. Paul Fire & Marine Insurance Co.*, 769 S.W.2d 64 (Ky.Ct.App.1989); *Byron v. Great American Indemnity Co.*, 54 R.I. 405, 173 A. 546 (1934); *Restatement (Second) of Conflict of Laws*, Subsection 142. Moreover, both Kentucky and Rhode Island have adopted Section 2–725 of the U.C.C. which states

(1) an act [action] for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it;

(2) a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

R.I.G.L. § 6A–2–725; Ky.Rev.Stat.An. § 355.2–725 (Michie/Bobbs Merrill 1987). Although the Rhode Island Code contains an additional provision, Section 2–725(5), which states

Notwithstanding any provision of this section, any action for breach of warranty arising out of an alleged design, inspection, testing, or manufacturing defect, or any alleged defect of whatsoever kind or nature of the product, must be commenced within ten (10) years after the date the product was first purchased for use or consumption,

this provision is properly seen as a statute of repose, rather than the "unique ... extended statute of limitations" alleged by plaintiff.

#### A. Breach of Contract and Implied Warranties

■ Plaintiff's claims for breach of contract and breach of implied warranties are barred by the statute of limitations. Count I, breach of contract, alleges that Sargent & Greenleaf delivered goods that did not conform to the characteristics promised. That cause of action clearly accrued at the time of delivery, December 22, 1986, and thus is barred by the four year limitation. See *Wolverine Insurance Co. v. Tower Iron Works, Inc.*, 370 F.2d 700 (1st Cir. 1966) ("it is clear that a cause of action for breach of a sales contract ... accrues when delivery is made, regardless of the buyer's knowledge of the breach") (applying Massachusetts law).

Section 2–725 states that breach of warranty claims accrue at the time of delivery, unless such warranties explicitly extend to future performance. By definition, implied warranties cannot explicitly extend to the future. *Clark v. DeLaval Separator Corp.*, 639 F.2d 1320, 1324 (5th Cir.1981); *Rockstroh v. A.H. Robins Co.*, 602 F.Supp. 1259, 1269 (D.Md.1985). Thus, plaintiff's claims based on the implied warranties of merchantability and fitness for a particular purpose are time-barred.

#### B. Express Warranties

■ Providence & Worcester also alleges breach of express warranties contained in Sargent & Greenleaf's advertising materials, which it alleges do explicitly ex-

tend to future performance. There are material issues of fact in dispute which prevent disposition of this issue on summary judgment. Whether an express warranty explicitly relates to future performance is a question of fact for the jury. *Economy Housing Co. v. Continental Forest Products, Inc.*, 757 F.2d 200, 203 (8th Cir.1985) (whether express warranty existed, and whether it related to future performance of goods, raise a genuine issue of material fact as to whether limitations period had run warranting denial of summary judgment); *In re Lone Star Industries, Inc., Concrete Railroad Cross Ties Litigation*, 776 F.Supp. 206, 220 (D.Md.1991) (question whether warranty explicitly extended to future is mixed question of fact and law requiring determination by trier of fact); *Continental Oil Co. v. General American Transp. Corp*, 409 F.Supp. 288, 292 (S.D.Tex.1976) (summary judgment inappropriate where question exists as to whether an express warranty covering future performance was made).

### IV. Limitation of Remedy

 Sargent & Greenleaf argues that even if the contract claims are not time-barred, Providence & Worcester's recovery is limited by the contractual provision stating:

> Seller shall not be liable for special, indirect, incidental or consequential damages. Seller's liability and Buyer's exclusive remedy is expressly limited, at Seller's option, to repair of defective goods or the replacement thereof with conforming goods ... or the repayment of the purchase price....

Section 2–719 provides that an agreement may "limit or alter the measure of damages ... as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." [4] Comment 1 to Section 2–719 states "under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect."

Although Providence & Worcester did not address the issue of whether the limitation of remedies comply with the Kentucky Commercial Code, there are a number of avenues that Providence & Worcester could have travelled to circumvent the effects of the limitation of remedy clause. First, Providence & Worcester could have argued that the provision limiting remedies to repair and replacement contained in Sargent & Greenleaf's acknowledgement and invoice forms is defective. Comment 2 to Section 2–719 states that subsection (1)(b) of Section 2–719 "creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. If the parties intend the term to describe the sole remedy under the contract, this must be clearly expressed." However, Sargent & Greenleaf has included an operative clause, on the back of the acknowledgement form, referring to the limited remedy provision as "exclusive."

Secondly, Providence & Worcester could argue that according to Section 2–719(2) the exclusive remedy "fails of its essential purpose." In *Rudd Constr. Equip. Co. v. Clark Equip. Co.*, 735 F.2d 974 (6th Cir. 1984), a buyer brought suit for damages arising out of a sale of a tractor shovel

---

4. Section 2–719 in its entirety states:

(1) Subject to the provisions of subsections (2) and (3) of this section and of KRS 355.2–718 on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

with a defective hydraulic hose which leaked causing destruction of the entire tractor. The Sixth Circuit had to determine whether the trial judge correctly applied Kentucky law when it allowed the buyer a recovery of damages amounting to the replacement value of the tractor. Seller argued that a clause in their agreement with buyer limiting remedies to repair or replacement of any defective parts should be given effect and hence seller should only be liable for the price of the hydraulic hose. The trial judge held that this remedy limitation failed of its essential purpose because to replace the hose now on a destroyed tractor would be fruitless. In making its determination the Court adopted the analysis set out in *Cox Motor Car Co. v. Castle*, 402 S.W.2d 429, 431 (Ky.1966) which concluded that a failure of part of a machine which directly results in the loss of the whole machine is considered "one big defective part."

The Sixth Circuit upheld the District Court's interpretation of Kentucky law noting "to the extent the express limitations in the contract precluded the owner in these circumstances from recovering at least the purchase price of the truck such limitations were ineffective under KRS Section 355.2–719(2)." *Rudd* at 982. In that case the remedy limitation failed even to give the buyer what it paid for. Here the replacement remedy does not fail in that sense.

Furthermore, even if an exclusive remedy provision "fails of its essential purpose," such a failure does not necessarily invalidate a limit on consequential damages. In *Carboline Co. v. Oxmoor Center*, 40 U.C.C.Rep.Serv. (Callaghan) 1728 (Ky.Ct.App.1985), a buyer of a roof covering system had entered into a limited warranty agreement with a manufacturer of the system. The contract contained both an exclusive repair remedy provision and also a disclaimer of liability for consequential damages. The roof covering system proved to be defective and after repeated failures to repair the roof the Court determined that this limited repair remedy had failed of its essential purpose. The buyer sought to recover consequential damages which included money paid to the buyer's tenants for property damage they had sustained because of the defective roof. The Court held that Section 2–719(3), allowing the exclusion of consequential damages and Section 2–719(2), allowing remedy "as provided by this act" if a limited remedy failed of its essential purpose, were mutually exclusive. Furthermore, the Court found that where an agreement between buyer and seller was made in a "sophisticated commercial setting" an exclusion of liability for consequential damages was valid and enforceable "even though circumstances caused the limited remedy provided by the agreement to fail of its essential purpose." *Carboline* at 1733.

Accordingly, even if this Court were to 1) find that Sargent & Greenleaf had breached warranties that were made through their representations and advertisements 2) reject Sargent & Greenleaf's disclaimer of warranties provision 3) assume the lock was defective and 4) hold that the limited remedy of repair and replacement failed of its essential purpose the only way this Court could bar enforcement of the provision excluding consequential damages, contained in the agreement between Providence & Worcester and Sargent & Greenleaf, would be to regard this provision as unconscionable. Section 2–719(3) states: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." The exclusion of consequential damages in a commercial transaction is not per se unconscionable. Indeed, Comment 3 to Section 2–719 explains that subsection (3) allows the parties to allocate "unknown or undeterminable risks" by excluding consequential damages. Merchants are free to allocate risks among themselves. There is absolutely no evidence of unequal bargaining power between Providence & Worcester and Sargent & Greenleaf. The transaction between Providence & Worcester and Sargent & Greenleaf involved two sophisticated businesses. In the context of this transaction such a limitation is perfectly fair and equitable. Providence & Worcester seeks to hold defendant liable for close to one million dollars in property damage based on

the alleged failure of a lock that cost about twenty dollars, out of a total shipment worth $4,237.67. Sargent & Greenleaf is correct in pointing out that prohibiting manufacturers from limiting their liability in this way would surely discourage them from producing products such as this.

### IV. Conclusion and Order

For the reasons stated above, defendant's motion for summary judgment is granted with respect to Counts I, breach of contract, III, breach of implied warranty of merchantability, and IV, breach of implied warranty of fitness for a particular purpose. The Court also grants defendant's motion for partial summary judgment on Count II, breach of express warranty. Plaintiff's potential recovery on that Count is limited to repair, replacement, or repayment of the purchase price of the lock which failed.

*It is so ordered.*